| 99 | 331 |
| 100 | 644 |
| 99 | 331 |
| 104 | 17 |
| 104 | 20 |
| 99 | 331 |
| 106 | 82 |
| 99 | 331 |
| f109 | 792 |

## Richmond.

BRESEE v. BRADFIELD.

MARCH 14, 1901.

Absent, Whittle, J.*

1. CHANCERY PRACTICE—*Reference for Account—Reference to Take Evidence.*—Where, from the nature of the case and of the relief sought, an account is necessary to enable the court to do justice between the parties, an order of reference will not be entered until its propriety has been made to appear by the evidence; and if such a case be submitted upon the bill without proof, and an answer denying its allegations, it should be dismissed; but where there is nothing in the pleadings and proofs to make an account proper and necessary, and the court has improvidently granted an order of reference, it is harmless error, for which the cause should not be reversed.

2. CHANCERY PRACTICE—*Estimates of Values—General Average of Values.* All estimates of values are uncertain, and where the credibility and integrity of the witnesses are unimpeached, and none of them enjoy peculiar opportunities or advantages in forming their estimate, it is not error to take the average estimate of all of them.

3. TRUSTS AND TRUSTEES—*Trustee-Purchaser—Voidable Sale—Rights of Creditors.*—A trustee cannot purchase the trust-subject from the beneficiary, regardless of the question of good or bad faith in the premises. The transaction, however, is not void, but voidable only, but only voidable at the instance of the beneficiary. The privilege of avoidance does not extend to the creditors of the beneficiary, though the relationship of the parties may be considered in determining the question of actual fraud raised by creditors of the beneficiary.

4. CHANCERY PRACTICE—*Cancellation—Inadequacy of Price.*—Mere inadequacy of price, if so gross as to shock the conscience and furnish satisfactory and decisive evidence of fraud, is sufficient ground for cancelling a conveyance or contract.

*Argued before Judge Whittle qualified.

5. CHANCERY PRACTICE—*Cancellation—Bad Faith and Inadequacy.*—Bad faith, undue advantages taken, or oppression exercised, or undue influence exerted, coupled with inadequacy of price, will induce a court of equity to grant relief, defensive or affirmative.

Appeal from two decrees of the Circuit Court of Loudoun county, pronounced April 26, 1899, and January 19, 1900, respectively, in a suit in chancery, wherein the appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*John H. Alexander* and *Christian & Christian,* for the appellant.

*J. B. McCabe, W. E. Garrett, Ed. Nichols,* and *Eppa Hunton, Jr.,* for the appellees.

KEITH, P., delivered the opinion of the court.

Bresee purchased a tract of land in the county of Loudoun for $19,000, which was conveyed to him by deed dated July 7, 1886, as trustee for the benefit of M. B. Nalle, wife of H. B. Nalle, during her life, free from the debts, contracts, and control of her husband, and, after her death, to pass in fee simple, discharged of the trust, to her heirs. The land was valuable and well improved, and after it passed into the possession of Mrs. Nalle and her husband, other valuable improvements were placed upon it, and, on September 30, 1897, Mrs. Nalle and her husband, "in consideration of the release to her, the said M. B. Nalle, by the said O. F. Bresee, of sundry debts by her due him both as principal and surety, and more particularly of the release and assignment to her by the said O. F. Bresee of two promissory notes whereon she is surety, which said notes are

more particularly described as follows: One note for the amount of five thousand dollars, dated 25th May, 1896, payable six months after date, by H. B. Nalle and M. B. Nalle to said O. F. Bresee, and one other note for the amount of $1,218, payable by H. B. Nalle to M. B. Nalle, dated 1st June, 1896, and by her endorsed to said O. F. Bresee, both of said notes being negotiable," the said M. B. Nalle and H. B. Nalle, her husband, do grant unto the said O. F. Bresee, with general warranty, all the right, title, and interest of M. B. Nalle, being an estate for her life, and all the right, title, and interest of H. B. Nalle, of whatever nature, in the tract of land before mentioned, which had been conveyed to him by deed of July 7, 1886. Some time prior to September, 1896, H. B. Nalle had made certain negotiable notes, amounting to about $4,000, which were payable to his wife, and endorsed by her, and then by A. J. Bradfield as second endorser, which were discounted by the Peoples National Bank at Leesburg. In December, 1896, Nalle made another note for $5,000, payable to his wife, who endorsed the same; and this note was also endorsed by Bradfield, and discounted by said bank, and the proceeds thereof applied first to the payment of the notes above mentioned, and the residue paid to H. B. Nalle. When this note became due on June 20, 1897, it was not paid by the drawer, but protested, and notice of the protest sent to the endorsers; Bradfield sending the notice of protest to O. F. Bresee. Bradfield subsequently paid this note to the bank, is now the holder thereof, and at the April term, 1898, he recovered a judgment on the same against H. B. and M. B. Nalle for the amount thereof, which judgment remains unpaid, except a few small credits, amounting to about $700.00.

In February, 1899, Bradfield filed his bill in the Circuit Court of Loudoun county to collect this judgment. In it he alleges that H. B. Nalle is insolvent; that by indorsing this note Mrs. Nalle bound her equitable estate and the rents, issues, and profits thereof, and agreed that the same should be applied and

taken to discharge the said debt if her husband should fail to pay it when due, and of this O. F. Bresee had full knowledge before the execution of the deed of September 30, 1897; that by the deed dated September 30, 1897, Mrs. Nalle and her husband conveyed all her life estate in said lands to O. F. Bresee for the consideration named therein. Bradfield avers that he has no personal knowledge of the existence of these debts as subsisting debts at the time the deed was made, and calls for strict proof on that point. He states that Mrs. Nalle was about 30 years of age in 1897, and is still living, and in good health; that at the date of said conveyance the value of her life estate in the land greatly exceeded the amount of the said two debts, " less the fair rental value of said land since the execution of said deed." He then avers that the deed was in part a deed of gift, and not for an adequate consideration as to at least one-half in value of the property conveyed; that it was executed with full knowledge on the part of Bresee of the existence of Bradfield's debt; that " because it was executed for a grossly inadequate consideration, and for consideration not deemed valuable in law, and especially was executed to said grantee with notice and knowledge as aforesaid, the same is void as to your orator's said demand, and it should be so adjudged and decreed; that for these reasons it was executed with intent to hinder, delay, and defraud creditors of H. B. Nalle, and especially your orator, and should be held null and void."

The bill then prays that O. F. Bresee, as trustee for M. B. Nalle, and individually, H. B. Nalle and M. B. Nalle, be made defendants; that said deed might be decreed to be executed for a consideration insufficient in law, and inadequate, and for this cause be adjudged to be null and void against plaintiff's demand.

Along with this bill, copies of the deeds to Bresee, trustee, and from Mr. and Mrs. Nalle to Bresee, and the note upon

which Bradfield had recovered his judgment above mentioned, were filed as exhibits.

Several other creditors of H. B. Nalle filed their petitions during the progress of the litigation, but there is nothing in them which requires particular consideration.

Bresee, in April, 1899, filed his answer to the bill, in which he denied all fraud, and denied that said deed from M. B. Nalle to him of September 30, 1897, was made with intent to hinder, delay, and defraud her creditors, or was for a consideration not valuable in law, or an inadequate one, or was in any respect null and void; and insisted that the deed was good and valid, and for a *bona fide* and adequate consideration, good and sufficient in both law and morals.

At the same term the cause was brought on for hearing on the bill and exhibits, answer and replication, and a summons to answer the several petitions which had been filed, and the court then ordered that the cause be referred to Commissioner Wise, or some other commissioner of this court, who was directed to take evidence upon the issues and matters involved in the bill and answer and petitions, and make report on the same.

To the October term, 1899, the commissioner returned his report.

Exclusively from the evidence of witnesses produced by complainants, he ascertained the fee simple value of the farm in controversy to be $27,830, with a net annual value of $1,200, and that Mrs. Nalle's life estate therein, "commuted," amounts to $14,958; that, considering the evidence of defendant's witnesses alone, the property "valued for ordinary agricultural purposes," was worth in fee simple $14,927, with a net annual value of $600, and that Mrs. Nalle's life estate therein was $7,479; and, taking the evidence of all the witnesses, the fee

simple value of the property amounted to $22,264, with a net annual value of $900, and a life estate of $11,218.50.

The evidence, returned with the report, shows that after the purchase, and before the filing of the bill in this case, Bresee had expended at least $17,000 in valuable permanent improvements upon this property.

Before the cause came on again to be heard, several other creditors filed petitions, but none of them allege any grounds of complaint or causes of action, or prayed for any relief other than those alleged and prayed for in the original bill of complaint and petitions already filed, and to them all O. F. Bresee and Mrs. Nalle filed answers denying the material allegations except as to the existence of the debts set up.

At the January term, 1900, the cause came on to be heard upon the commissioner's report, the exceptions filed by both complainant and defendant, and the depositions and exhibits returned therewith, and the court entered a decree confirming "the third statement of the report, and overruling all exceptions thereto in conflict with such finding, and ascertaining that the fee-simple value of the lands was $22,264, as of September 30, 1897, and that Mrs. Nalle's life estate therein was then of the value of $11,281.50; that the only consideration for the deed of September 30, 1897, was the two notes, amounting to $6,570, which was not adequate, and that because the said consideration was not full, fair, and adequate, and the transaction was not one between M. B. Nalle and her husband and O. F. Bresee, her trustee, the said deed is not valid against the claims of the several petitioners in the cause, except to the amount of $6,570, and ordered O. F. Bresee personally to pay to a special receiver appointed by the court $4,648.50, with interest from September 30, 1897—being the difference established as the value of Mrs. Nalle's life estate ($11,218.50), and the consideration which Bresee paid for it ($6,570), and the costs of this suit. Thereupon Bresee obtained an appeal from one of the judges of this court.

The first error assigned is that the court erred in referring the cause to a commissioner to take evidence and report upon the bill and answer; the contention of appellant being that if the complainant chose to submit the cause upon the bill and answer, the court should have dismissed the bill.

Where a decree for an account is essential to the relief sought it ought not to be granted until the plaintiff has established by proof at least a *prima facie* right to the relief he seeks, and that an account is necessary to enable the court to render a proper decree in the cause.

In 2d Bar. Ch. Pr. (2d ed.), at page 680, it is said: "The settled rule, however, in respect to orders of reference, is that before an application for one shall be granted it must appear, with reasonable certainty, that an order will be necessary, and it will not be made upon the suggestion that in some contingency one will be required; for it will not do to put the defendant to the trouble and expense of rendering an account until it is ascertained that the plaintiff has a right to demand it, nor will a reference be made for the purpose of furnishing evidence in support of the allegations of a bill."

The question has frequently been before this court, and in every instance, so far as our investigation has gone, the rule under consideration has been applied in a case where a statement of accounts was necessary in order that the plaintiff might be given the relief asked in the bill. *Lee County* v. *Fulkerson*, 21 Gratt. 182; *Sadler* v. *Whitehurst*, 83 Va. 46; *Balto., &c. Co.* v. *Williams & Co.*, 94 Va. 422; and *Beale & Co.* v. *Hall*, 97 Va. 383, were all cases of this character.

The decree before us does not direct an account. By it the commissioner was ordered to take "evidence upon the issues and matters involved in the bill and answer and petitions, and make a report on the same, together with any pertinent matter, and return with his report the evidence taken on which the same is based." The reference to the commissioner was wholly unneces-

sary. The parties could have taken evidence before the commissioner without a decree, and notwithstanding the report it was still the duty of the court, we apprehend, to consider the evidence, apply it to the issues presented by the pleadings, and decide accordingly. The case is wholly dissimilar to those cited in support of the proposition for which the appellant contends.

As was said in *Watkins* v. *Young*, 31 Gratt. 94: "It cannot be said that there is anything in the pleadings and proofs in the cause to make an account proper." 2 Rob. Pr. (Old Ed.), p. 359.

From all the authorities we deduce the conclusion, that where from the nature of the case, and of the relief sought, an account is necessary to enable the court to do justice between the parties, an order of reference will not be entered until its propriety has been made to appear by the evidence; and if in such a case it be submitted upon the bill without proof, and an answer denying its allegations, it should be dismissed; but where there is nothing in the pleadings and proofs to make an account proper and necessary, and the court has improvidently granted an order of reference, it is harmless error, for which the cause should not be reversed. *Lancaster* v. *Barton*, 92 Va. 620.

When the case came on to be heard before the Circuit Court, a decree was entered by which the value of the life estate of Mrs. Nalle, as of September 30, 1897, was ascertained to be $11,-218.50. With that sum the appellant was charged, and he was credited with $6,570, the amount of the two notes mentioned in the deed from Mrs. Nalle and her husband to Bresee, as of September 30, 1897, which the court ascertains to be the only valuable consideration for the said conveyance; and a decree was entered directing him to pay $4,648.50, with interest from September 30, 1897, to the receiver of the court. All estimates of value are uncertain, and the opinions of witnesses in this case take a very wide range, and that adopted by the court is based upon a general average of their conflicting views. We are unable to discover that any individual witness or group of witnesses en-

joyed peculiar opportunities or advantages in forming an esti-
mate. Their credibility and integrity are unimpeached, and
there is no ground upon which we can undertake to say that that
conclusion is erroneous.

It is claimed upon the part of appellee that, inasmuch as
Bresee was the trustee for his daughter, Mrs. Nalle, he was under
a disability to become a purchaser of any part of the trust estate
from her, and the cases of *Smith* v. *Miller*, 98 Va. 535, *Har-
rison* v. *Manson*, 95 Va. 593, and others of a like character, are
relied upon.

The cases cited are those of trustees whose duty it was to sell
the trust property, and who at the sale became the purchasers of
the trust subject, but the rule is "of universal application to all
persons coming within its principle; which is, that no party can
be permitted to purchase an interest where he has a duty to per-
form which is inconsistent with the character of purchaser." 2
Rob. Pr., p. 317. As was said by Lord Eldon, in Ex-parte
James, 8 Ves. 345: "This doctrine as to purchases by trustees,
assignees, and persons having a confidential character, rests much
more upon general principle than upon the circumstances of any
individual case. It rests upon this, that the purchase is not per-
mitted in any case, however honest the circumstances; the gene-
ral interests of justice requiring it to be destroyed in every in-
stance, as no court is equal to the examination and ascertainment
of the truth in much the greater number of cases."

It has been established and classified as a "third species of
fraud, which may be presumed from the circumstances and con-
ditions of the parties contracting; and this goes further than the
rule of law, which is, that fraud must be proved, not presumed."
*Chesterfield* v. *Janssen*, 2 Ves. Sr. 155.

Treating of this subject, Mr. Perry in his work on Trusts, sec.
194 (5th ed.), says: "At law, fraud must be proved; but in
equity there are certain rules prohibiting parties bearing certain
relations to each other from contracting between themselves,

and, if parties bearing such relations enter into contracts with each other, courts of equity presume them to be fraudulent, and convert the fraudulent party into a trustee. And herein courts of equity go further than courts of law, and presume fraud in cases where a court of law would require it to be proved; that is, if parties within the prohibited relations or conditions contract between themselves, courts of equity will avoid the contract altogether, without proof, or they will throw upon the party standing in this position of trust, confidence, and influence, the burden of proving the entire fairness of the transaction. Thus, if a parent buys property of his child, guardian of his ward, a trustee of his *cestui que trust*, an attorney of his client, or an agent of his principal, equity will either avoid the contract altogether, without proof, or it will throw the burden of proving the fairness of the transaction upon the purchaser; and, if the proof fails, the contract will be avoided, or the purchaser will be construed to be a trustee at the election of the other party."

It appears from the averments of the bill that O. F. Bresee is the trustee and the father of Mrs. Nalle, and that he purchased from her the whole of her interest. We are not prepared to say that the statement of these facts would not afford a sufficient ground of relief, if it were asked for by the beneficiary, Mrs. Nalle. The transaction, it is to be observed, was not void, but voidable only, and voidable only at the election of Mrs. Nalle. She was the *cestui que trust*. She alone was injured if there was a breach of trust. Upon her alone devolved the privilege of annulling the transaction, and Bresee would be declared a trustee for her benefit were the deed at her instance set aside, but she is here making no complaint, and the principle invoked does not operate for the benefit or protection of her creditors. We are not to be understood as saying that the relation which Bresee bore to this transaction, of father and trustee to his grantor, is not to be considered in determining the question at issue between himself and her creditors. The whole case should be con-

sidered by the court in determining whether or not he paid a
fair and valuable consideration under all the circumstances sur-
rounding the transaction. What we do say is that, while Mrs.
Nalle could, without proof, merely by force of that relation have
disaffirmed the deed which was voidable at her election, her
creditors do not, in this respect, stand in her shoes, and can only
avoid the deed by proof that it was a fraud upon their rights.

"Although the actual cases in which a contract or conveyance
had been cancelled on account of gross inadequacy merely, with-
out other inequitable incidents, are very few, yet the doctrine
is settled, by a consensus of decisions and *dicta*, that, even in the
absence of all other circumstances, when the inadequacy of price
is so gross that it shocks the conscience, and furnishes satisfactory
and decisive evidence of fraud, it will be a sufficient ground for
cancelling a conveyance or contract, whether executed or execu-
tory. Even then fraud, and not inadequacy of price, is the true
and only cause for the interposition of equity and the granting
of relief." 2 Pom. Eq. Jur. (2d ed.), sec. 927.

"If there is nothing but mere inadequacy of price, the case
must be extreme, in order to call for the interposition of equity.
* * * * When the accompanying incidents are inequi-
table, and show bad faith, such as concealments, misrepresenta-
tions, undue advantage, oppression on the part of the one who
obtains the benefit, or ignorance, weakness of mind, sickness, old
age, incapacity, pecuniary necessities, and the like, on the part
of the other, these circumstances combined with inadequacy of
price, may easily induce a court to grant relief, defensive or af-
firmative." 2 Pom. Eq. Jur. (2nd ed.), sec. 928.

The principles thus stated, which are abundantly sustained by
the adjudicated cases, are sufficient to dispose of this controversy.
O. F. Bresee purchased an estate for life in a tract of land which
he had theretofore conveyed to his daughter. The value of such
an estate is always uncertain, and its purchase partakes in some
degree of the nature of a contract of hazard. In the case under

consideration, it appears that Mrs. Nalle's health was not strong. There is evidence tending to show that a policy of insurance in a reputable company could not have been obtained upon her life. There is not the slightest evidence of any bad faith, concealment, misrepresentation, undue advantage, or oppression, on the part of the grantee, or of ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessity, and the like, upon the part of the grantor. There is no evidence that he used his relation, either as trustee or as father, to influence his daughter and bene- ficiary to sell him her life estate at the price named in the deed. It is true that she was indebted, but no part of the consideration passed to her as a consequence of the sale, and there is nothing to show that she did not act of her own free will, "knowingly, intentionally, and deliberately, with full knowledge of the nature and effect of her act, or that her consent was obtained by any op- pression, undue influence or advantage taken of her condition, situation, or necessities." 2 Pom. Eq. Jur., sec. 928.

We have seen that the creditors of Mrs. Nalle were not in a position to disaffirm and set aside the deed from her to her father by reason of the relation of trustee and *cestui que trust* that ex- isted between them. We have seen that there is no evidence of bad faith, or of any undue advantage taken, or oppression ex- ercised, or undue influence exerted on the part of Bresee in the purchase of the life estate under consideration. The only ques- tion which remains, then, was the price so inadequate as, stand- ing alone, would create such a presumption of fraud in the trans- action as shocks the conscience and furnishes a satisfactory and decisive proof of fraud?

Looking to the nature of the estate purchased, and to all the circumstances that surrounded the parties, we are unable to say that such a conclusion is to be deduced from a comparison of the value of the life estate, and the price paid for it by Bresee. It is not to be forgotten that the values in this case have been fixed merely upon the opinions of witnesses, and while we cannot say

that the estimate adopted by the court is not sustained by the proof, we cannot say that it furnishes decisive evidence of fraud in face of the fact that many witnesses testified in this case that the value of the estate purchased was little in excess of the consideration named in the deed.

We are therefore of opinion that the decree of the Circuit Court should be reversed, and this court, proceeding to enter such decree as the Circuit Court should have rendered, the bill should be dismissed.

*Reversed.*