# AKIN v. BONFILS *et al.*

No. 6151.  Opinion Filed June 1, 1915.

(150 Pac. 194.)

1. **APPEAL AND ERROR—Assignments of Error—Overruling of Demurrer.**  Error of the trial court in overruling a demurrer to the petition is not presented for review by an assignment of error charging errors of law occurring during the trial and duly excepted to by the defendant.

2. **APPEAL AND ERROR—Assignments of Error.**  Where an assignment of error is so general as not to point out the real error or errors complained of, this court will not consider it, nor will it examine the record with regard thereto.

3. **APPEAL AND ERROR—Special Findings—Conclusiveness—Conflicting Evidence.**  Where a case is tried by a court without a jury, and special findings of fact are made, based partly upon oral testimony, such findings, as a rule, are conclusive on appeal upon any disputed and doubtful question of fact.

4. **GUARDIAN AND WARD—Deed to Guardian—Validity—Right to Attack—Stranger to Title.**  A deed made to one who formerly occupied the relation of guardian of the grantor, though voidable as to the latter, or those in privity with him, may not be avoided by a stranger, whose attempt to establish title in himself from the common grantor has failed.

(Syllabus by the Court.)

*Error from District Court, Blaine County;*
*James R. Tolbert, Judge.*

Action by F. G. Bonfils and others against Lee A. Akin.  Judgment for plaintiffs, and defendant brings error.  Affirmed.

*Wm. O. Woolman,* for plaintiff in error.

*Seymour Foose* and *M. D. Libby,* for defendants in error.

SHARP, J.  This action presents error from the district court of Blaine county, and involves the title and right to possession of the allotment of Clarence Black, an

Arapaho Indian. Under an act of Congress of February 8, 1887 (24 Stat. at L. 388), there was allotted to said Black the W. ½ of the S. W. ¼ of section 13, and the W. ½ of the N. W. ¼ of section 25, all in township 15, north of range 11, west of the Indian meridian, in what was, at the time of allotment, Oklahoma Territory. Some time thereafter, the date being immaterial, there was issued to said Clarence Black a trust patent, and on January 21, 1909, another patent was issued, by which the fee-simple title to said allotment was conveyed to and vested in the said allottee. On the 12th day of February, 1907, Clarence Black executed a lease to the defendant, Akin, to the W. ½ of the N. W. ¼ of said section 25, for the term of two years, beginning on the 1st day of July, 1907, and ending on the 1st day of July, 1909, and on the 18th day of June, 1908, said Black executed a lease to the W. ½ of the S. W. ¼ of section 13, to one Joseph Backes, for the term of two years, beginning July 1, 1908, and ending July 1, 1910, which said leases were made in accordance with certain rules and regulations for leasing Indian allotments theretofore promulgated by the Secretary of the Interior. Pursuant to the terms thereof, said lessees entered upon and occupied the respective tracts of land above named. The date of execution, duration, and validity of each of these leases are not in controversy. Under a regulation of the Secretary of the Interior, promulgated March 20, 1908, a number of Indians, Clarence Black included, were authorized to make the experiment of managing their allotments, including the hiring of necessary labor in connection therewith. This authority gave the right to lease lands allotted to those named, upon the condition that the leases to be made should be in writing, and be null and void if made prior to six months before the expiration of an existing lease. On the 8th day of December, 1908, Clarence Black executed to the plaintiff in error a lease to both of his 80-acre tracts for the term

of three years, beginning January 1, 1909. On the date thereof, the lease of February 12, 1907, to Akin, had more than six months to run, and the lease to Backes, dated June 18, 1908, had about 18 months in which to run. Joseph Backes died January 10, 1910, and his heirs, including the defendant in error John Backes, continued to possess the said 80-acre tract of land during the remainder of the term. On the same day that Black executed to Akin the three-year lease on his allotment, he signed an instrument purporting to convey to Akin the title to both of said 80-acre tracts. Said instrument, in form a deed, was without date, was not acknowledged, and was delivered to Akin with the understanding and agreement, then had between him and Black, that when the fee-simple patent from the government should be issued to and received by the latter, he (Black) would acknowledge and unconditionally deliver said deed, upon the payment to him by Akin of the sum of $3,250. On the 2d day of March, 1909, at the Arapaho agency in the state of Wyoming, Black executed, acknowledged, and delivered to John H. Dillon a deed of conveyance to his said allotment, containing full covenants of warranty and seisin, in consideration of $2,800 in hand paid. This deed and Black's final patent were duly recorded in the office of the register of deeds in and for Blaine county, on March 13, 1909, and on the 15th day of March following said Dillon executed, acknowledged, and delivered his deed of conveyance of said lands to the plaintiff Bonfils in consideration of $2,900, cash in hand paid. Although the deed to said land was made to Bonfils alone, the title thereto was taken in trust by him for the joint use and benefit of himself and the defendant in error E. P. Kelly. The latter deed was placed of record in the office of the register of deeds of Blaine county on March 16, 1909. Clarence Black died September 10, 1910, in Fremont county, Wyo. On the 11th day of November, 1910, there was filed for recorded and re-

corded in the office of the register of deeds in and for Blaine county a purported warranty deed to the lands in question, which deed purported to have been executed by Clarence Black to the plaintiff in error, Akin, on February 3, 1909. After the expiration of the original lease made by Black to Joseph Backes, his son, John Backes, continued to occupy the 80-acre tract originally leased by his father from Black under a new lease for one year made with Bonfils. Shortly prior to the bringing of this action in the trial court, the defendant, Akin, attempted to take possession of the latter tract, and to exclude therefrom Bonfils' tenant, Backes.

Plaintiffs' suit was begun February 20, 1911, at which time a temporary injunction was granted, restraining defendant, during the pendency of the action, from in any wise interfering with the plaintiffs, or either of them, in the use, occupation, or possession of the above described land, and from in any manner taking or attempting to take possession, or to dispossess the plaintiffs, or either of them, of said land. At the trial the court submitted special findings of fact separately from its conclusions of law. By the decree it was determined that Akin was without right, title, interest, or estate in and to the lands last above described, either by lease or under the alleged deed of conveyance, bearing date February 3, 1909, and filed for record November 11, 1910; and said defendant was perpetually enjoined from setting up any right, title, or interest in and to said premises.

As has been seen, Akin's claim of title is based partly upon his three-year lease of December 8, 1908, and upon the instrument signed contemporaneously therewith, and which is identified by the record as the deed of February 3, 1909. Among other findings of fact made by the trial court, are the following:

"That on the 8th day of December, 1908, the said Clarence Black, being then on a visit to Oklahoma at Watonga, on that date signed a deed of conveyance without date or acknowledgment, purporting to convey to said Lee A. Akin both said 80-acre tracts of land for the express consideration of $3,250, upon understanding and agreement then had between said Black and Akin that, when the patent from the government should be issued to said Black, granting him said land and received by the said Black, he (Black) would acknowledge and (presumably) deliver said deed upon payment to him by the said Akin of the said sum of $3,250. That the said Akin retained the possession of said undelivered, undated, and unacknowledged deed, and filed the same for record on the 11th day of November, 1910, in the office of register of deeds of said Blaine county. That the said Clarence Black did not acknowledge execution of said deed before A. W. Johnson, notary public, on the 3d day of February, 1909, or at all, and did not deliver the same as a binding contract or deed of conveyance to the said Akin, and that the said Akin did not pay to the said Clarence Black the said purchase price so agreed upon."

In its conclusion of law, the court found that the agreement or blank deed between Black and Akin, whereby the former was to convey to the latter his allotted lands after receipt of patent, was null and void, because made at a time when the statutory restriction upon the alienation of said land had not been removed. The court further concluded, as a matter of law, that the lease from Black to Akin, dated December 8, 1908, was likewise null and void.

The first assignment of error is that the court erred in overruling defendant's demurrer to the plaintiffs' petition. Upon an examination, however, of the petition in error, we fail to find that the court's action in the respect named is assigned as error. Plaintiff in error has assigned as grounds for reversal, "Errors of law occurring during the trial of said cause and duly excepted to by the defend-

ant, Akin." The court's action in overruling or sustaining a demurrer to a pleading is not included in "errors of law occurring at the trial," for the very good reason that the error complained of did not in fact occur at or during the trial. *Haynes et al. v. Smith,* 29 Okla. 703, 119 Pac. 246; *O'Neil v. James,* 40 Okla. 661, 140 Pac. 141; *Mechanics' Sav. Bank v. Harding,* 65 Kan. 655, 70 Pac. 655.

The second assignment of error is that the findings of fact and conclusions of law made by the court are, respectively, not sustained by the evidence, and are contrary to the law. After this broadcast charge of wholesale error, there follows 24 pages of argument upon the facts. Much is said about the weight and credibility of the evidence of different witnesses, without indicating any one finding of fact out of the voluminous findings, or pointing to a single conclusion of law, which is deemed unsupported by the evidence, and without stating that any one of the many conclusions of law is erroneous. Where assignments of error are so general as not to point out the real error complained of, such assignments, it has been held by this court, will not be considered. *Willet v. Johnson,* 13 Okla. 563, 76 Pac. 174; *Turner v. First Nat. Bank,* 40 Okla. 498, 139 Pac. 703; *Johnson v. Johnson,* 43 Okla. 582, 143 Pac. 670.

Notwithstanding the size of the record, containing, as it does, almost 600 typewritten pages, and the task that has been imposed upon us, we have examined it at some length, and arrived at the conclusion that there is abundant evidence in the record to justify the court's findings of fact. There was evidence that Akin acknowledged that he had not secured a deed to the property, and was willing to sell the improvements which he as a tenant had built thereon; that he tried to buy the land from the plaintiffs, and made them an offer for it, and sent a telegram to Dillon, asking that he (Dillon) protect him for money

owing him by Black; that Akin went to Wyoming to pro-
cure from Black his patent, and on his return to Watonga
told two witnesses, Kelley and Porter, that Dillon had got-
ten ahead of him, and also, in Dillon's presence, acknowl-
edged the latter's purchase of the land from Black. In
fact, on June 23, 1909, Akin wrote to Bonfils at Denver,
Colo., as follows:

Mr. F. G. Bonfils, Denver, Colo.—Dear Sir: I will
make you a price on this land W. ½ of N. W. ¼ 25, 15,
11, and W. ½ of south W. ¼ 13, 15, 11. I will give
$4,500.00 for this land or I will give $500.00 for my im-
provements. Let me know by return mail if I cannot buy
this land or sell my improvements at price I will move
them off. Now I have lived on this land for the last nine
years with the expectation of buying it to make me a
home when it was sold. I have not been treated right in
the deal. Of course you know nothing about that. I am
offering you a fair price for this land, all it is worth.
Now let me know just what you will do.
"Yours truly, LEE A. AKIN."

Other letters, written to E. P. Kelly by Akin at or
about the time of the letter to Bonfils, concerning the pur-
chase of the land, were offered in evidence. These letters,
recognizing the ownership of the land to be in Bonfils,
were all written long after the alleged acknowledgment
by Black of the warranty deed signed in December, 1908,
and when, if Akin's present claim be correct, he was the
absolute owner of the Black allotment. The circumstances
under which these letters were written, and the accom-
panying explanations, as well as the letters themselves, and
the testimony of a large number of witnesses, were all
before the court. It has been repeatedly held by this court
that where a case is tried by the court, upon controverted
questions of fact, and there is evidence reasonably tending
to support its findings, such findings will not be disturbed
on the weight of the evidence. *Hilsmeyer v. Blake,* 34
Okla. 477, 125 Pac. 1129, and cases cited. Also, that

where a case is tried by the court without a jury, and special findings of fact are made, and those findings are based in part upon oral testimony, such findings are conclusive upon this court upon a disputed and doubtful issue of fact. *Hausam v. Parker*, 31 Okla. 399, 121 Pac. 1063; *J. I. Case Threshing Mach. Co. v. Lyons et al.*, 40 Okla. 356, 138 Pac. 167; *Faour & Bros v. Moran et al.*, 40 Okla. 597, 139 Pac. 833.

It does not appear that the decree of the court, declaring null and void the lease of December 8, 1908, is attacked in this court, but, instead, that plaintiff in error relies upon the instrument executed at the same time, and which, according to his claim, was acknowledged on February 3d following. Whether or not Black was in Blaine county on February 3, 1909, and on that day acknowledged the deed which, after his death, was filed for record on November 11, 1910, or whether he was at the time with Yellow Horse near Ft. Washakie, Wyo., was the principal issue of fact tried out in the lower court. There was abundant evidence for the court's finding:

"That the said Clarence Black did not acknowledge execution of said deed before A. W. Johnson, notary public [the officer before whom the deed purports to have been acknowledged] on the 3d day of February, 1909, or at all."

It is not claimed that this instrument was valid when made; in fact, as held by the trial court, at the time of the signing thereof, Black, under his trust patent, could not have alienated his allotted lands. In either event, therefore, Akin is concluded.

Finally, it is urged that Dillon occupied a fiduciary relation to Black; hence was disqualified from purchasing the allotment of the latter. It appears that on the 9th day of August, 1904, one Cornell filed in the county court of Blaine county a petition, alleging that he was a friend of

Clarence Black, who by reason of weakness of mind was an incompetent, and was incapable of taking care of himself and managing his property, and asked that John H. Dillon be appointed guardian of said Black. On September 6th following, an order was made, appointing Dillon guardian of Black, and his bond was fixed at the sum. of $3,000, which was thereafter made and filed, and said Dillon duly qualified as guardian. Thereafter it appears that Dillon entered upon the discharge of his guardianship duties. On the part of defendants in error, it is insisted: First, that the order of appointment was void; second, that Dillon, soon after his appointment, abandoned the same, though it is not contended that he was ever legally discharged as guardian. During the latter part of December, 1905, Dillon wrote to the United States attorney at Guthrie, advising him that Col. Stouch, agent for the Cheyenne and Arapaho Indians, had refused to recognize his (Dillon's) letters of guardianship. This letter was referred to Col. Stouch, who on February 15, 1906, advised Dillon that he could see no reason why Black should have a legal guardian, as the United States acted in that capacity, and could transact all necessary business for him. It appears, however, that in June following, Dillon filed a guardian's report, in the probate court of Blaine county. A small amount of lease money, it seems, was at one time collected by Dillon, but was thereafter repaid to the lessee, and thereafter Black in person transacted all of his business affairs, including the leases to both Akin and Backes, attention to which has been called. That at or about the time of the making of said guardian's report Dillon ceased to exercise any further authority as guardian appears not to be disputed, and it was found by the trial court that Dillon did not take into his possession any property, either real or personal, of the said Black, and did not at any time, by virtue of his alleged appointment, exercise any

control or custody of the person of the said Black. The court further specifically found:

"That the said John H. Dillon, becoming satisfied by correspondence with the United States attorney for the district of Oklahoma, and with the Indian agent at Darlington, Okla., during the latter part of the year 1905 and during the month of January, in the year 1906, that the said Clarence Black possessed no property or moneys that were not under the control and management of the government, and that the said John H. Dillon had no authority in relation to the property of said Clarence Black, then utterly abandoned said guardianship from that time forward, of which abandonment the said Lee A. Akin was informed and knew of at the time."

It will be remembered that in March, 1908, Black was named as one of a number of Indians who were authorized, under certain limitations, to lease their allotments, and, further, that in January, 1909, there was issued to him, free of all restrictions, a patent to his lands. This we again mention as indicative of Black's mental capacity to transact business, as viewed by the officers of the general government.

It is unnecessary, however, to rest our conclusions upon the somewhat doubtful legal proposition that the guardianship proceedings were void, or upon the fact that the relationship of guardian and ward had in fact ceased to exist, for the controversy is not one between the vendee, or his successor in interest, of Dillon, and Black, or the personal representatives, heirs or privies in blood of the latter, but between the purchaser from said grantee, on the one hand, and Akin, claiming as a purchaser from Black. Whatever the relationship was between Dillon and Black, the deed from the latter to the former was not, on that account, void, but voidable alone at the election of the latter, or those who succeeded by operation of law to his estate, or who were privies in representation, unless possibly the interests of creditors might be affected. Black or

his legal representatives were the parties aggrieved, if any fraud, deceit, or undue influence was practiced by Dillon, and they alone have the right to ask for a cancellation of Dillon's deed. *Burford v. Aldridge,* 165 Mo. 419, 63 S. W. 109, 65 S. W. 720; *Bronson v. Thompson et al.,* 77 Conn. 214, 58 Atl. 692; *Bresee v. Bradfield,* 99 Va. 331, 38 S. E. 196; 1 Perry on Trusts, section 195.

Plaintiff in error does not assail Black's competency in fact to execute a conveyance; indeed, he cannot well do so, for his claim of title rests upon an alleged deed from Black. The personal representatives or heirs of Black are not complaining; and, it having been found by the trial court, in effect, that Akin had no deed, it would be going far indeed to permit him to assail and defend against a conveyance made upon a fair consideration, free of both fraud and undue influence, so far as disclosed by the record. Akin, being without title to the premises, is in no position to attack the deed from Dillon to Black. Whatever we may think of the transaction, as between Dillon and Black, it cannot be availed of by Akin, who has parted with nothing, and who has no title.

The judgment of the trial court is, in all things, affirmed.

All the Justices concur.