NATHAN S. BRONSON ET AL. *vs.* SEYMOUR S. THOMPSON ET AL.

Third Judicial District, New Haven, June Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Under our practice a creditor may, in one and the same suit, obtain a judgment against his debtor and equitable aid to secure its payment.

A testator left $7,000 in trust to be safely invested, reinvested and managed by the trustee, who was directed to pay, annually, for ten years, $600 to the testator's brother, and then to turn over to him the remaining portion of the fund, if any. In a suit by creditors of the beneficiary it was *held :*—

1. That while the trust was not a mere passive or dry one, still, as there was no provision against anticipation, alienation, or attachment, the beneficiary could dispose of his interest; and that whatever he could assign, his creditors could ask a court of equity to aid them in securing for their benefit.

2. That an assignment by the beneficiary to the trustee did not terminate the trust, which could only be effected by a decree of court.

3. That the trustee would have been justified in refusing to pay over to the beneficiary more than $600 a year, unless ordered to do so by a court of equity; but that having consented to make larger payments he was not thereby deprived of his right to credit for them as against the beneficiary and those claiming under him.

A purchase by a trustee of the beneficiary's interest in the trust estate is not void. If harmful or unjust to the beneficiary, he can avoid the sale by suit; but—unless his neglect or refusal to ask for its avoidance is inequitable to others—no one else can.

The neglect or refusal of the beneficiary in the present case to attempt to avoid the sale, *held* not to be inequitable toward his creditors.

Upon a reservation the only questions that can be properly considered are such as pertain to the disposition of the cause on the issues raised by the pleadings and such facts as may have been agreed upon or settled by a finding or verdict.

Argued June 16th—decided August 12th, 1904.

ACTION by general creditors for a judgment against their debtor and the appropriation of certain equitable assets to the payment of the judgment, brought to the Court of Common Pleas in New Haven County, where a demurrer to one of the defenses in the answer was overruled (*Hubbard, J.*) and the case was reserved (*Bishop, J.*) for the advice of this court on a special finding of facts. *Judgment advised for defendants.*

*Henry G. Newton* and *Ward Church*, for the plaintiffs.

*William H. Ely* and *Albert H. Barclay*, for the defendant Atwater.

BALDWIN, J. This suit is brought against William J. Atwater, as trustee under the will of Charles E. Thompson, Seymour S. Thompson, a beneficiary under the will, and the executors of the will; the writ also containing a process of foreign attachment against the trustee and the executors.

The finding shows these facts: In 1900 Charles E. Thompson died, leaving by his will $7,000 in trust " to safely invest and reinvest the same, with power to execute all deeds, conveyances, and transfers necessary to the proper management of the same, and to pay to my brother, Seymour S. Thompson, of said town of New Haven, the sum of six hundred dollars annually for the period of ten years from the date of my death; and if after the expiration of ten years there shall remain any balance of said trust fund, then I direct that the sum be paid to him." Seymour S. Thompson was also one of the residuary legatees. Atwater accepted the trust, and prior to July 6th, 1902, had received over $5,000 from the executors.

On January 1st, 1903, Seymour S. Thompson owed the plaintiffs $360. He had previously received over $2,300 from the trustee, and for some weeks had been unsuccessfully importuning him to buy out all his (Thompson's) interests under the will. He also sought to sell out to others and employed a broker for that purpose, but the best offer

he received was $2,600. Finally, on learning this, Atwater agreed on January 5th, 1903, to buy out his interest in the trust fund for $3,000, and paid him that sum in cash, taking a written assignment. At this time Thompson was *sui juris;* had full information and complete understanding of all the facts concerning the property, the transaction itself, the person with whom he was dealing, and his relation to him; all the facts and the force and effect of the transfer were explained to him by two attorneys other than any attorney representing Atwater; and Atwater himself made to him a perfectly honest and complete disclosure of all knowledge or information in his possession concerning the property, and paid a fair and adequate price for his interest, and more than had been offered by any one else. Neither Atwater nor Thompson then knew whether the trust legacy would be paid in full by the executors, but Atwater expected to make a profit. Atwater in this transaction acted in good faith, and was not influenced by a selfish motive, and his purchase of the interest in said trust secured to Thompson more money than he could have obtained from any other parties and more than he had offered to assign said interest for. He bought without notice of any obligation due from Thompson to the plaintiffs, or to any other person, and had no knowledge, information, or intimation that Thompson had any expectation or desire to prevent any of his creditors from obtaining all sums of money that might be due them from him.

Thompson has not been heard of since the assignment, and his whereabouts are unknown. He did not appear to defend. He had no property, outside of his interest in the trust fund, known to the plaintiffs. He has never attempted or authorized the plaintiffs to attempt to avoid the assignment. Before giving it he had told Atwater that he wanted to leave the State. There was no evidence that he was indebted to any one but the plaintiffs, except for a broker's commission of $100 on the sale to Atwater.

There will be no residuary estate, and the executors will only be able to pay $6,386.57, in all, towards making up the

$7,000 trust fund. This suit was brought on January 26th, 1903, and the executors then had about $2,500 in their hands. They have since sold land and paid to Atwater $656.67, and at the time of the trial in 1904 had $600 more in their hands, which was applicable to making up the trust fund.

The plaintiffs are clearly entitled to judgment against Thompson for what he owes them. This puts their suit, under our practice, on the footing of a judgment creditor's bill in equity. *Vail* v. *Hammond*, 60 Conn. 374, 383.

It is plain from the will of Charles E. Thompson that he meant his brother to receive, under the trust which he created for his benefit, only $600 annually for ten years, and the balance, if any, of the fund at the expiration of that period. The trustee was required to invest and reinvest it safely and assume its active management. It was therefore not a mere passive or dry trust. Nevertheless, as there was no provision against anticipation, alienation or attchments, the *cestui que trust* could dispose of his interest; and whatever he could assign his creditors could ask the aid of a court of equity in securing for their benefit. *Huntington* v. *Jones*, 72 Conn. 45; *Sears* v. *Choate*, 146 Mass. 395, 15 Northeastern Rep. 786.

His assignment to the trustee did not terminate the trust. That could only be accomplished by a decree of a proper court. 2 Perry on Trusts, § 920. The defendant Atwater is therefore properly made a party, as trustee.

He would have been justified in refusing to pay over to Seymour S. Thompson more than the annuity of $600, unless ordered to do so by a court of equity. *Claflin* v. *Claflin*, 149 Mass. 19, 20 Northeastern Rep. 454. That he consented, however, to make larger payments, without such protection, does not deprive him of the right to credit for them, as against Thompson and all claiming under him.

The question, then, is whether the plaintiffs, as judgment creditors, can fasten an equitable lien upon so much of the trust fund which has come or may come into the hands of Atwater, as may remain after deducting the payments made

therefrom to Thompson before they sued, together with any proper charges for services and expenses in the execution of the trust. They clearly can, unless the assignment stands in the way. This the defendant, Thompson, does not attack. A purchase by a trustee from the *cestui que trust* of his interest in the trust estate is not void. If there was any want of equity towards him in the transaction, the *cestui que trust* can avoid the sale by an equitable proceeding; but unless he neglects or refuses to ask for such relief, under circumstances making the neglect or refusal inequitable towards others, no one else can. 1 Perry on Trusts, § 195.

The complaint alleges that Thompson made the assignment to defraud the plaintiffs and his other creditors, which Atwater well knew. In the answer of Atwater these averments were denied, and he pleaded that he bought in entire good faith and without knowledge that Thompson was indebted to any one. The finding as to these points is substantially in favor of Atwater. It is also in his favor as regards any right of the *cestui que trust* to avoid the assignment, although in that respect it would seem that the court below overlooked the circumstance that Atwater, under the terms of the trust and from his control over the trust fund, could well afford to pay a larger price than others, and that the fact that he expected to make a profit out of his purchase is hardly consistent with the further fact, also found, that he was not influenced by a selfish motive.

The plaintiffs therefore failed to make out the case which they had stated. The proofs showed that it was not inequitable towards them on the part of Thompson for him to neglect or refuse to attempt to avoid the sale. Whatever may have been his motive in making it, no purpose to defraud his creditors having been known to or shared by Atwater, they cannot impeach the latter's title. *Partelo* v. *Harris*, 26 Conn. 480.

Evidence was offered and ruled out on the trial in the Court of Common Pleas under a claim that it would show that Atwater used the balance of the trust fund then remaining in his hands, which amounted to about $2,820, in

making up the $3,000 which he paid to Thompson. The plaintiffs seek to review that ruling on this reservation.

The proceeding is not adapted to such a purpose. The only questions that can be properly considered on a reservation are such as pertain to the proper disposition of the cause on the issues formed by the pleadings, and such facts as may be ascertained by agreement or determined by a finding or verdict.

The Court of Common Pleas is advised to dismiss the complaint.

Costs in this court will be taxed for the defendants.

In this opinion the other judges concurred.