### COMMISSIONER OF INTERNAL REVENUE v. FIELD.

No. 334.

Circuit Court of Appeals, Second Circuit.

July 7, 1930.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Masten & Nichols, of New York City (Edward N. Perkins, Beverley R. Robinson, and Daniel B. Priest, all of New York City, of counsel), for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Marshall Field, the respondent's grandfather, by his will set up a series of trusts, in one of which he devised and bequeathed three-fifths of his residuary estate to his trustees in trust for his grandson, Marshall III, the respondent, and the other two-fifths in trust for another grandson, Henry. The limitations were as follows: To Marshall, a legacy of $450,000 to be paid when he reached twenty-five years of age, and equal sums at thirty, thirty-five and forty; to Henry $300,000 at corresponding ages. The income of the corpus of each trust, subject to these reductions, was to be accumulated till the beneficiary was thirty years old, when he was to receive one-sixth with accumulations until he was thirty-five, one-third until he was forty, one-half until he was forty-five, after which he would receive the full income until he was fifty, when the trust was to end, and the beneficiary to receive the principal absolutely. There were cross remainders to the survivor, in case either grandson died without issue before distribution; no title or interest in the income was to vest in either before distribution, nor should he have power to assign any part. There were also remainders over to the issue of each grandson who might die before distribution leaving issue.

Henry died without issue before the time of distribution, and his share devolved upon Marshall. Marshall thereupon insisted that Henry's share came to him free from the provisions for accumulation, the restraints upon alienation, and apparently also from the contingent remainders over. This the trustees denied, and a suit was begun in Illinois, whose courts had jurisdiction over the estate, in which it was decreed that Marshall was right, that the provisions for accumulation no longer applied to Henry's share after his death, and that he became entitled to the whole income as it fell due, "absolutely with all the incidents of absolute ownership, including the right of testamentary disposition and transmission by him to his heirs and next of kin." Thereupon Marshall executed a deed to his wife, assigning to her a two-thirds interest "in all the income of the two-fifths of the residuary estate of Marshall Field, deceased, * * * intending hereby to convey to and vest in" his wife "an undi-

vided two-thirds interest in all the net income adjudicated to belong to" him by the Illinois decree. The first question is whether this deed effected a conveyance in præsenti of two-thirds of the income accruing upon Henry's share, which Marshall need not, as he did not, return. The Commissioner charged him with the amount, but the Board held otherwise and the Commissioner appealed.

The Supreme Court has declared in the broadest language that instruments intended to deflect income, subsequently falling due serially, from a husband to his wife are unavailing for tax purposes (Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731), thus taking a more comprehensive view of the statute than we found necessary in Mitchel v. Bowers (C. C. A.) 15 F.(2d) 287, and Harris v. Commissioner (C. C. A.) 39 F.(2d) 546. These were, however, all cases in which, though the instrument affected to convey an existing interest in property, there was none at the time which the law recognized. We do not understand that, where there are such, they may not be assigned like other property, or that, when they have been, the income is still taxable to the assignor. Hence the case turns upon whether, after the Illinois decree, Marshall had a present interest in the income of Henry's share assignable under the law of Illinois. If so, his deed as effectively divested him of the assigned interest, as though it had been land or a chattel; his wife became the beneficiary under the trust, and was the only person who could be taxed.

Under the trustees' contention Henry's share after his death was still subject to the provisions for accumulation, the restraints on alienation and the contingent remainders over. We need not consider the validity of these for we must accept the decree as holding that Henry's share was not so limited after his death. On the contrary it became merely a trust until Marshall reached fifty, when he got the principal. Now if this trust was terminable at any time at Marshall's will (Josselyn v. Josselyn, 6 Sim. 63; Saunders v. Vautier, 4 Beav. 115), plainly he had a present interest to convey. The decree is too plain to admit of any doubt that he was absolutely entitled to the income; it probably extinguished the contingent remainders as well, but with this we need not concern ourselves.

If it was not so terminable, and the trusts remained, as was plainly the intent, still Marshall was an equitable beneficiary for a term of years, and the result is the same.

So far as we know, it is universally true that the law considers an equitable interest for life or for a term of years as present property, alienable like any other (Brandon v. Robinson, 18 Ves. 429; Younghusband v. Gisborne, 1 Collier 400; Snowden v. Dale, 6 Sim. 524; Bronson v. Thompson, 77 Conn. 214, 58 A. 692), at least when there is no restraint on alienation (Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254). The law of Illinois is the same. Binns v. La Forge, 191 Ill. 598, 61 N. E. 382. In Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, a series of payments of income was treated as integrated into an existing interest, and for that reason alone the payments were income. No doubt the difference is conventional; there is no inherent reason why other series of future installments should not be regarded as constituting a single right, as is an annuity or the reversion upon a sublease. Some are, some are not; the distinction is historical, not rational. The interest, as adjudicated by the decree, was of a well-known kind, and it was single; in consequence it was presently assignable like a bond or building, and this is equally true though the contingent remainders remained, since Marshall is still alive.

The second question raised is this: To conduct the Illinois suit Field retained attorneys upon an agreement that they should receive fifteen per cent. of any income which through their efforts might be relieved of the provisions for accumulation, of the restraint upon alienation, and apparently also of the remainders over to issue. Eventually Field settled this claim by agreeing to pay $200,000 in 1922, the year in question here, and $100,000 annually for eight years more. The payment of $200,000 Field deducted in his return, and the Commissioner disallowed the deduction. The Board reversed the Commissioner on the theory that the payment was a "capital expenditure," part of the cost of a wasting asset.

This is tenable only in case we may treat the accelerated payments of income as profits, acquired at the cost of the fee. For the computation of profits upon purchases and sales the statute prescribed no details, and it has at times been found necessary to add to the purchase price incidental amounts without which the property could not have been secured. But if the payments here at bar are treated as the income arising from bequeathed or devised property and the attorneys' fee an expense of protecting the rights so granted, it was not a cost of acquisition, or "a capital

expenditure" at all. In that case Field must bring it within some statutory deduction; there are none which justify discussion.

While an argument may be made, not wholly unplausible, that the acceleration of payments and the power of immediate and unconditional disposition which the decree adjudged, were new rights, any such doctrine leads too far. All that happened was that Field and the trustees got into a dispute about the meaning of the will; and Field succeeded in getting the court to take his view. We cannot for that reason say that the court's action changed what had all along been his rights; it did not create them; he had them already. We do not of course forget that a disputed right is not for practical purposes an available right at all; or that in fact Field was helpless until the decree passed. Nevertheless, we cannot take the judgments of a court as creating property without confusing their function, and substituting juristic metaphysics for those conventions on which in the end most of the law stands. For instance, precisely as good an argument might be made in favor of fees paid in the defense of property in possession, a freehold or a share of stock. Without them the possessor's rights would succumb to the attack; it would follow that any subsequent income is acquired at that cost. Again, if the property be a leasehold or an annuity, it is a "wasting asset," and the fees must be somehow prorated; if it be not "wasting," they will be part of the cost upon a sale. So put, we should suppose that nobody would be hardy enough to maintain that an attorney's fee was a "capital expenditure." We cannot make over fundamental notions in the interest of a more searching theoretic analysis.

Furthermore, even if proper in any case, such a theory would not be applicable here. The decree did not give Field any income to which his title was in dispute; it merely accelerated what the trustees maintained to be still subject to accumulation, relieved it of contingent remainders, and ended the restraints on alienation. Judged by the resulting profit to Field, it might be possible actuarially to calculate this gain, but the record contains no foundation for the computation. Indeed, the mere statement of the problem shows the factitious nature of the underlying theory. We are to assume that the added security to Field, his power of immediate disposition and enjoyment over what in any case was eventually his, was a new asset, from whose value the fee must be deducted. Such refinements are too speculative

to be workable in application; expenses of this sort must fall within those general costs of protecting one's property for which the statute makes no allowance.

The decision is affirmed as to the wife's share; it is reversed as to the attorneys' fee.