CAROL A. YACOBACCI ET AL. *v.* ALLSTATE INSURANCE COMPANY

SUPERIOR COURT     NEW HAVEN COUNTY     FILE NO. 136585

Memorandum filed May 13, 1976

*Sachs, Sachs, DeLaney & Sachs,* for the plaintiffs.
*James O'Connor Shea,* for the defendant.

GRILLO, J. The plaintiff Carol A. Yacobacci, a minor and the daughter of the plaintiff Richard J. Yacobacci, was riding her bicycle on May 5, 1972, when she was struck by an uninsured motorist. The question involved in these proceedings is whether the policy of insurance issued by the defendant to the plaintiff Richard J. Yacobacci provided uninsured motorists coverage of $40,000 or $20,000.

At the time of the accident, the plaintiff Richard J. Yacobacci was insured under a "master" contract, or so-called "crusader" contract — the only policy ever mailed to him by the defendant. That contract provided that "[w]hen two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each." In addition to the above-mentioned policy, Yacobacci would receive intermittently from the defendant an "insurance extension certificate" which specified his actual premiums and coverages, and which identified the automobile or automobiles which were insured under the subject policy and the separate premiums due for each car. Those two documents represent the coverage to which the plaintiffs were entitled on the day of the accident. The "master" policy underlying the individual extension certificate issued to the named insured covered two vehicles, a Dart and a Rambler, for the period from December 30, 1971, to December 30, 1972. The extension certificate in effect at the time of the accident set forth coverages involving the two cars and recited, in part, as follows: "UNINSURED MOTORISTS. Each Person $20,000." The crusader contract with its "attached" insurance extension certificate provided the fulcrum of the plaintiffs' rights relative to coverage for the accident.

Where two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums. See *Sturdy* v. *Allied Mutual Ins. Co.,* 203 Kan. 783 (named insured injured by uninsured motorist while riding motorcycle recovered double on one policy covering two automobiles); *Cunningham* v. *Insurance Co. of North America,* 213 Va. 72 (insured injured by uninsured motorist while riding in nonowned automobile recovered on one policy covering three automobiles up to the amount of judgment).

The Kansas Supreme Court in *Sturdy* stated (p. 792): "It must be borne in mind the purpose of uninsured motorist insurance is to provide compensation for personal injury to the innocent victim of the uninsured motorist." "When we pay a double premium we expect double coverage. This is . . . in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant [insurer] argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverages in the same policy so as to recover more than his actual loss . . . ." Id., 793.

The court concludes that the maximum exposure and coverage to the plaintiffs under the uninsured motorists coverage of the master contract coupled with the extension certificate issued to the plaintiff Richard J. Yacobacci is in the amount of $40,000 — $20,000 coverage under the Dart extension certificate plus $20,000 under the Rambler extension certificate.