NATIONWIDE INSURANCE COMPANY *v.*
JOHN H. GODE, JR., ET AL.

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued March 9—decision released June 22, 1982

*George E. McGoldrick,* for the plaintiff.

*Steven R. Rolnick,* with whom were *Edward J. Berns* and, on the brief, *Michael Jainchill,* for the defendants.

ARTHUR H. HEALEY, J.   This action seeking an injunction and a declaratory judgment was reserved for the advice of this court on a stipulation of the following facts.  On October 14, 1979, the defendant Christopher Gode, a minor child of the defendant John H. Gode, Jr., was a passenger in a car operated by Timothy Dolan which was involved in a two-car accident in Clinton.  At the time of the accident, the defendant Christopher Gode resided in the household of the defendant, John H. Gode, Jr. As a result of the accident, Christopher Gode was seriously injured and has been paid $20,000 by Timothy Dolan's liability insurance carrier.  This was the entire limit of the insurance liability policy on the Dolan automobile and is the minimum liability insurance required by General Statutes §§ 38-175b and 14-112 (a).

The damages from the injuries sustained by Christopher Gode, which include the loss of sight in one eye, could exceed $20,000.  At the time of the accident, the plaintiff, Nationwide Insurance Company, had in force an automobile liability policy covering the two automobiles owned by the defendant, John H. Gode, Jr.  A premium was paid to the plaintiff for insurance on each of the two vehicles covered under the policy.  This policy provided the minimum uninsured motorist coverage in the amount of $20,000 for each person and $40,000 for each accident.

The defendant Christopher Gode was within the definition of an "insured" under the insurance policy as a relative living in the household of the defendant John H. Gode, Jr.  On February 19, 1980, the defendants made a claim against the plaintiff for additional payments under the uninsured motorist

provision of their policy. The plaintiff denied the defendants' claim and on April 8, 1980, the defendants filed for arbitration of the claim with the American Arbitration Association. The parties have agreed to refrain from proceeding with the arbitration proceeding pending a determination of two questions by this court.[1]

The questions reserved for the advice of this court are: (1) Was the Dolan vehicle "underinsured" under § 38-175c (b) (2) of the General Statutes? (2) For the purposes of determining the applicability of § 38-175c (b) (2) of the General Statutes, was the liability coverage on the Dolan automobile "less than the applicable limits of liability under the uninsured motorist portion" of the Gode policy? The determination of the second of these questions is decisive of the issues presented.

The basic issue presented is whether, under our statutes, an insured can aggregate or "stack"[2] the

[1] This court has previously considered somewhat similar questions reserved for advice in *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 338 A.2d 453 (1973), and *Fidelity & Casualty Co.* v. *Darrow*, 161 Conn. 169, 286 A.2d 288 (1971). We have, where we have deemed it appropriate, exercised our discretion to entertain reservations in actions for declaratory judgments. See, e.g., *Fidelity & Casualty Co.* v. *Darrow*, supra.

[2] "Stacking" refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate. See *Blakeslee* v. *Farm Bureau Mutual Ins. Co.*, 388 Mich. 464, 473, 201 N.W.2d 786 (1972); see also *Van Hoozer* v. *Farmers Ins. Exchange*, 219 Kan. 595, 608, 549 P.2d 1354 (1976); *Detroit Automobile Inter-Insurance Exchange* v. *McMillan*, 97 Mich. App. 687, 693, 296 N.W.2d 147 (1980); 7 Am. Jur. 2d, Automobile Insurance § 326; 8C Appleman, Insurance Law and Practice § 5103; Widiss, A Guide to Uninsured Motorist Coverage § 2.34a (1981 Sup.); 19 Couch, Insurance (2d Ed.) § 82.1:11 (Pocket Sup.). One court has noted that "[s]tacking is derived from the presumption that when the named insured purchases uninsured motorist coverage

uninsured motorist coverage limits of liability applicable to each motor vehicle covered by his policy to determine whether he can claim underinsured benefits as provided by General Statutes § 38-175c (a) and (b) (2). The defendants claim that the Dolan auto was "underinsured" in that the limit of liability on that auto was less than the "applicable limits of liability under the uninsured motorist portion" of their policy with the plaintiff. General Statutes § 38-175c (b) (2). They contend that since they received only $20,000 from Dolan's insurer and since the aggregate of their uninsured motorist coverage on both vehicles totals $40,000, they are entitled to claim an additional $20,000 as "underinsured motorist benefits." The plaintiff claims that the defendants cannot "stack" or aggregate the limits on their two uninsured motorist coverages in order to determine any underinsured motorist benefits because the defendants are limited, by statute, to the highest level of coverage purchased on any one automobile. Since the defendants' uninsured motorist coverage on both automobiles was for the same amount as the liability coverage on the at-fault vehicle, i.e., $20,000, the plaintiff alleges that no underinsured motorist claim will lie.

---

on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere." *Travelers Ins. Co.* v. *Pac*, 337 So. 2d 397, 398 (Fla. App. 1976) ; see *Hartford Accident & Indemnity Co.* v. *Bridges*, 350 So. 2d 1379, 1381 (Miss. 1977) ; *Grimes* v. *Concord General Mutual Ins. Co.*, 120 N.H. 718, 721–22, 422 A.2d 1312 (1980). "Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy, whereas inter-policy stacking involves the aggregation of coverage under more than one policy." *Taft* v. *Cerwonka*, 433 A.2d 215, 217 n.3 (R.I. 1981) ; see *Lumbermens Mutual Casualty Co.* v. *Martin*, 399 So. 2d 536, 538 n.4 (Fla. App. 1981).

General Statutes § 38-175c, as amended by Public Acts 1979, No. 79-235, provides in relevant part: "(a) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured and underinsured motor vehicles . . . . (b) . . . . (2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section."[3] The 1979 amendment to the statute added subsections (b) (1) and (2) and the reference to the underinsured motor vehicle coverage contained in § 38-175c (a). The purpose of this amendment was to remedy the "anomalous situation" which we noted in *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 475, 370 A.2d 1011 (1976), and *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 471, 338

---

[3] General Statutes § 38-175c (b) (1) provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage."

A.2d 453 (1973),[4] where an injured party could find himself in a better position if the tortfeasor had no liability insurance than if he had only the statutory minimum amount. See also *State Farm Mutual Automobile Ins. Co.* v. *Murphy,* 38 Ill. App. 3d 709, 348 N.E.2d 491 (1976) (injured insured not able to recover under his uninsured motorist coverage because tortfeasor's insurer had paid out limits of liability to other injured victims). The legislative history behind Public Acts 1979, No. 79-235 elucidates this legislative intent.

In the senate proceedings,[5] Senator James J. Murphy, Jr., commented: "Mr. President, what this bill does is require that hereafter, when one has purchased uninsured motorist coverage, that if that coverage exceeds any insurance coverage which a responsible party has in causing injuries, that once the liability insurance of the so-called responsible or negligent party has been exhausted, if there is additional coverage under one's uninsured motorists plan, then payment under that program would be triggered and allow for the greater recovery for the insured . . . ." 22 S. Proc., Pt. 5, 1979 Sess., p. 1354. In the house of representatives, Representative Silvio A. Mastrianni stated: "Mr. Speaker, the present law requires automobile lia-

---

[4] In *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 473, 338 A.2d 453 (1973), we said: "While a strong public policy argument can be advanced in support of the plaintiff's desired expansion of the definition of 'uninsured' to prevent the particular anomaly presented herein, it is not the function of this court to attempt to improve legislation by reading provisions into it."

[5] In construing a statute and determining the legislative intent, we may take judicial notice of the discussions on the floor of the General Assembly although such discussions are not controlling on statutory interpretation. See *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 245, 377 A.2d 305 (1977); *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974); *Harris* v. *Planning Commission,* 151 Conn. 95, 100, 193 A.2d 499 (1963).

bility policies provide a minimum uninsured motorist protection in the amount of $20,000 per person and $40,000 per accident. The law further states, Mr. Speaker, an insured may purchase higher limits of uninsured motorist protection not to exceed the limit of bodily injury liability coverage purchased on the policy. An uninsured vehicle is generally defined as a vehicle to which no bodily injury bond or policy applies at the time of the accident. Mr. Speaker, this bill requires coverage be provided against the underinsured motorist. It also requires [the] insurance company of an innocent driver to pay up to the full amount of the uninsured motorist coverage when the at fault driver's insurance has been exhausted and a deficiency remains. Mr. Speaker, I move the passage of this bill as amended by Senate Amendment 'A.'" 22 H. R. Proc., Pt. 16, 1979 Sess., p. 5341.[6] While the legislative purpose may be clear upon an examination of these comments, we can find no indication in the amendment's history as to the legislature's view concerning the "stacking" of coverages.

We now turn to the actual language of the statute, which, the plaintiff claims, is determinative of the issues presented. The plaintiff points to the legislature's selective use of singular and plural terms

---

[6] We have also considered the comments of John Day, president of the Insurance Association of Connecticut, and of Charles Watson, president of the Independent Insurance Agents of Connecticut. See Hearings before Joint Standing Committee on Insurance and Real Estate, 1979 Sess., pp. 100–101, 124. It is interesting to note that in testimony before the Joint Standing Committee on Insurance and Real Estate, the commissioner on insurance, Joseph C. Mike, stated: "[T]he bill intends that uninsured motorists coverage also will extend to underinsurance situations. This is a policy that we're presently enforcing . . . as best we can within the insurance department we don't know offhand of any companies that are not in compliance with our policy. We'd like to see this statute—the statute

contained in the definition of "underinsured motor vehicle" to support its argument. The plaintiff contends that § 38-175c (b) (2)'s use of the phrase *"sum* of the limits of liability under all . . . insurance *policies* applicable" (emphasis added) to describe the yardstick against which the insured's uninsured motorist coverage is measured clearly implies a singular, non-aggregated meaning to the phrase "applicable limits of liability under the uninsured motorist portion of the policy against which claim is made . . ." which describes that coverage. The plaintiff concludes by stating: "If the statutory language had said 'policies,' the position advocated by defendants herein might have some slight credibility. Since 'policy' is singular, however, it is apparent that the wording is designed to carry out the intent of the legislature and of the proponents of the bill as previously noted; namely, that 'underinsured' coverage refers only to the purchase of higher limits of coverage, and not to the purchase of multiple policies with minimum coverage. When the language of the statute is clear and unequivocal, there is no need for statutory construction."

We cannot agree with the plaintiff. "In interpreting the meaning of a statute, we attempt to

changed to guarantee continued cooperation. What this says is if you're struck by an individual—under the present system if you're struck by an individual who has no insurance, you collect on your own uninsured motorist—uninsured motorist coverage to the limits of your own coverage. Which means if you carry $100,000 coverage and you're struck by someone you have $100,00 [sic] if they don't have insurance. What we want to be able to say is if you're struck by someone who has the basic limits only $20,000, you would still be able to go to your own uninsured motorists coverage for the next 80 so you're still up to $100,000. Without this there are potential situations where you could be worse off having been hit by someone who has the basic minimum insurance than you are if you get hit by someone who has no insurance." Hearings before Joint Standing Committee on Insurance and Real Estate, 1979 Sess., pp. 81–82.

determine the intent of the legislature as expressed by the common and approved usage of the words in the statute. General Statutes § 1-1 (a); *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 406, 294 A.2d 546 [1972]; *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721 [1971]. General Statutes § 1-1 (f) provides that '[w]ords importing the singular number may extend and be applied to several persons or things and words importing the plural may include the singular.' " *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 359, 402 A.2d 332 (1978). In the interpretation of statutory provisions, " 'the application of common sense to the language is not to be excluded.' " *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410–11, 311 A.2d 65 (1972); see *Wiegand* v. *Heffernan,* 170 Conn. 567, 582, 368 A.2d 103 (1976); *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975). Therefore, under § 1-1 (f), the term "policy," as it appears in § 38-175c (b) (2) could reasonably and logically be interpreted to include the plural term "policies."

Even if it were argued that this interpretation was not a fair reading of the statute, the plaintiff's argument still must fail. If it is assumed, for purposes of this argument, that the legislature intended only that underinsured motorist coverage was to be determined by the uninsured motorist limits of the one "policy" against which a claim is made, since the parties have stipulated that "[a]t the time of the accident, the plaintiff had in force an automobile liability *policy* covering the two automobiles owned by the defendant . . ." (emphasis added), the instant situation clearly falls within the statute's scope. It is apparent that, even if the

plaintiff's interpretation of the statute is correct, it does not preclude stacking of uninsured motorist coverages under a multiple vehicle insurance policy.

A statute is to be construed by considering its legislative history, language, purpose and the circumstances surrounding its enactment. See *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978), and cases cited therein. At the time of the enactment of § 38-175c (b) (1) and (2), this court had already held that the stacking of uninsured motorist coverages was allowed where the insured was covered by two or more policies and was injured by an uninsured motorist.[7] See *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 335, 387 A.2d 539 (1978); *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 475, 370 A.2d 1011 (1976); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 451–52, 370 A.2d 1006 (1976); see also *Yacobacci* v. *Allstate Ins. Co.,* 33 Conn. Sup. 229, 372 A.2d 987 (1976). " 'This is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle, and a separate premium is charged for the coverage afforded to each of the described vehicles.' See also *Tucker* v. *Government Employees Ins. Co.,* 288 So. 2d 238 (Fla. 1973)." *Safeco Ins. Co.* v. *Vetre,* supra, 334.

It is clear that the legislative intention behind § 38-175c (b) (1) and (2) was "that uninsured motorists coverage also will extend to underinsurance situations." See comments of Joseph C. Mike, commissioner on insurance, Hearings before Joint Standing Committee on Insurance and Real Estate,

[7] The legislature is presumed to be mindful of the judicial construction of relevant legislation. *Sawyer Savings Bank* v. *American Trading Co.,* 176 Conn. 185, 189, 405 A.2d 635 (1978).

1979 Sess., pp. 81–82. We cannot find, nor have we been presented with, any logical reason why the defendants should not be allowed to stack or aggregate the uninsured motorist coverages in the underinsured motorist situation which is set out in the stipulation of facts in the reservation before us. See *State Farm Mutual Automobile Ins. Co.* v. *White*, 330 So. 2d 858 (Fla. App. 1976);[3] see also *St. Arnaud* v. *Allstate Ins. Co.*, 501 F. Sup. 192 (S.D. Miss. 1980).

"Where two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums." *Yacobacci* v. *Allstate Ins. Co.*, supra, 231. See *Sturdy* v. *Allied Mutual Ins. Co.*, 203 Kan. 783, 793, 457 P.2d 34 (1969); *Hartford Accident & Indemnity Co.* v. *Bridges*, 350 So. 2d 1379, 1381 (Miss. 1977); *Southern Farm Bureau Casualty Ins. Co.* v. *Roberts*, 323 So. 2d 536, 538 (Miss. 1975); *Kemp* v. *Allstate Ins. Co.*, 601 P.2d 20, 24 (Mont. 1979); *Grimes* v. *Concord General Mutual Ins. Co.*, 120 N.H. 718, 724, 422 A.2d 1312 (1980) (Douglas, J., dissenting) (and cases cited therein); *Esler* v. *United States Services Automobile Assn.*, 273 S.C. 259, 263, 255 S.E.2d 676 (1979); *Cunningham* v. *Ins. Co. of North America*, 213 Va. 72, 79, 189 S.E.2d 832 (1972); but cf. 8C Appleman, Insurance Law and Practice § 5106, p. 517; 8D Appleman, supra, § 5192, p. 613.

There is no question that if the Dolan vehicle had been uninsured, the defendants, under *Safeco*

---

[3] We note that Florida has enacted an antistacking statute since the decision in *State Farm Mutual Ins. Co.* v. *White*, 330 So. 2d 858 (Fla. App. 1976). See Fla. Stat. Ann. § 627.4132 (West Pocket Part 1981) and *State Farm Mutual Automobile Ins. Co.* v. *Wimpee*, 376 So. 2d 20 (Fla. App. 1979).

*Ins. Co.* v. *Vetre,* could have aggregated their uninsured motorist coverages in order to make a claim for up to $40,000. In order to avoid another "anomalous" situation like that noted in *Roy* v. *Centennial Ins. Co.,* supra, 475, and *Simonette* v. *Great American Ins. Co.,* supra, 471, we hold that the legislature, in enacting § 38-175c (b) (1) and (2) reasonably intended that underinsured motorist coverage be accorded treatment similar to that given to uninsured motorist coverage. Therefore, § 38-175c must be interpreted to allow the defendants to stack the uninsured motorist coverages when determining their underinsured motorist benefits.[9]

This, however, is not the end of our discussion of this issue. We must still consider whether there was any effective exclusionary or limiting language in the plaintiff's insurance policy which operated to negate the effect of § 38-175c which we have held allows an insured to stack uninsured motorist coverages when determining underinsured benefits. The plaintiff points to a clause contained in the policy entitled "LIMITS OF PAYMENT[,]

---

[9] We want to be clearly understood as limiting our holding on the reservation before us on this appeal to cases factually similar to this case. This must be said because we anticipate a possible argument extending the analysis herein to accomplish a result that would be absurd. An example that comes to mind is the situation which would result if a plaintiff, urging stacking, was injured or killed, while in an automobile which was insured as only one of a fleet of cars. Our answer to such a situation will be given only when such a circumstance properly presents itself for review. The Rhode Island Supreme Court has noted that in these circumstances "even in those jurisdictions where intra-policy stacking for two or three vehicles is allowed, courts have uniformly denied such an extension of the stacking theory. See e.g. *Holloway* v. *Nationwide Mutual Insurance Co.,* 376 So. 2d 690 (Ala. 1979); *Ohio Casualty Insurance Co.* v. *Stanfield,* 581 S.W.2d 555 (Ky. 1979); *Linderer* v. *Royal Globe Insurance Co.,* 597 S.W.2d 656 (Mo. App. 1980); *Continental Casualty Co.* v. *Darch,* 27 Wash. App. 726, 620 P.2d 1005 (1980)." *Taft* v. *Cerwonka,* 433 A.2d 215, 219n (R.I. 1981).

AMOUNTS PAYABLE FOR UNINSURED MOTORISTS LOSSES" and specifically to section 2 which states: "2. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. Limits apply to each insured vehicle as stated in the Declarations. In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us." Id.

The plaintiff claims that § 38-175c (b) (2)'s reference to "the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made . . ." incorporates the above quoted limitation clause which defines the "applicable limits." The plaintiff argues that since the language of the policy and that of the statute are plain and consistent, its policy has effectively prevented the defendants from stacking their coverages. We do not agree.

We find that what we said in our discussions of the "other insurance"[10] clauses in *Safeco Ins. Co.* v. *Vetre,* supra, and *Pecker* v. *Aetna Casualty & Surety Co.,* supra, is dispositive of this issue. In those cases we held that "[a]n insurer may reduce its liability under an uninsured motorist provision only as is permitted by § 38-175a-6 (d) of the Regu-

---

[10] An "other insurance" clause provides that if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance. See *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 445-46, 370 A.2d 1006 (1976); *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 172, 286 A.2d 288 (1971).

lations of Connecticut State Agencies, that is, the policy may provide for a reduction to the extent that damages have been paid by or on behalf of any person responsible for the injury, paid or are payable under workmen's compensation or disability benefit laws, paid under the policy in settlement of a liability claim, or paid or are payable under any provision of the policy for direct indemnity for medical expenses or basic reparation benefits.

"Other than those exceptions, the regulations do not authorize any reduction of coverage because of 'other insurance.' Moreover, any provisions of a private contract of insurance which conflict with the statutes or regulations must give way to the latter. General Statutes § 38-175d. The 'other insurance' provisions, therefore, cannot prevent aggregation of the uninsured motorist coverage of the two policies in question." (Footnote omitted.) *Safeco Ins. Co.* v. *Vetre,* supra, 332–33; see *Pecker* v. *Aetna Casualty & Surety Co.,* supra, 450–51; *State Farm Mutual Automobile Ins. Co.* v. *Murphy,* 226 Ga. 710, 714, 177 S.E.2d 257 (1970). We have already found that the legislative intention was to put the underinsured motorist coverage on the same footing as uninsured motorist coverage. Since underinsured motorist coverage, as defined in General Statutes § 38-175c, can be determined only by reference to and in comparison with the insured's uninsured motorist coverages, and since claim is made against an insured's uninsured motorist coverage after it is determined that the at-fault party is underinsured,[11] the regulations which apply to uninsured

---

[11] In fact, underinsured motorist coverage can be viewed as the equivalent of uninsured motorist coverage to the extent that an injured insured receives less than his uninsured motorist policy limits from a minimally or lesser insured tortfeasor. See *Simonette* v.

motorist coverage must equally apply to underinsured motorist coverage. Therefore, since the regulations have the force of law; *Pecker v. Aetna Casualty & Surety Co.,* supra, 449; and do not expressly authorize a limitation of payment provision such as that contained in this insurance policy, the clause cannot operate to prevent the defendants from stacking their coverages as they have tried to do. See also *Holloway v. Nationwide Mutual Ins. Co.,* 376 So. 2d 690, 694–95 (Ala. 1979) (stacking of uninsured motorist coverages mandated by statute).

To answer the questions presented, then, we find that the defendants are entitled to aggregate or stack their uninsured motorist coverages in order to determine their underinsured benefits. Therefore, for purposes of § 38-175c (b) (2), the Dolan automobile's liability coverage ($20,000) was less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made (20,000 & 20,000 = 40,000) and the answer to question 2 is "yes." It necessarily follows that we answer question 1 "yes."

In this opinion SPEZIALE, C. J., PETERS and ARMENTANO, Js., concurred.

SHEA, J. (dissenting). I would reject this reservation because of certain procedural irregularities but, more importantly, because the stipulation does not contain some information which is essential for an adequate resolution of the questions propounded.

The relief sought by the plaintiff is primarily a declaratory judgment upon whether the defendants have any valid claim under the insurance policy

*Great American Ins. Co.,* 165 Conn. 466, 475, 338 A.2d 453 (1973) (*Bogdanski, J.,* dissenting), and *Porter v. Empire Fire & Marine Ins. Co.,* 106 Ariz. 274, 475 P.2d 258 (1970).

issued by the plaintiff. A temporary injunction to prohibit arbitration pendente lite and general equitable relief also are requested but it is clear that such relief would ordinarily be unavailable in view of General Statutes § 38-175c (a) which mandates binding arbitration for determination of uninsured motorist coverage questions. *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 41, 434 A.2d 304 (1980). Since the parties have implicitly waived their rights to arbitration of the questions reserved, we are not barred from considering them by virtue of that statute.

The complaint contains no allegations which would satisfy the requirements of Practice Book § 390 for rendering a declaratory judgment. No answer or other responsive pleading has been filed. Instead the parties proceeded to file a stipulation in accordance with Practice Book § 3134. The stipulation does resolve the issues of fact raised by the complaint, but does not indicate whether any special defenses will ultimately be raised or whether the conditions precedent to the issuance of the declaratory judgment sought as set forth in § 390 have been met.

In *Cavalli* v. *McMahon,* 174 Conn. 212, 215, 384 A.2d 374 (1978), we refused to entertain a reservation under similar conditions: "Thus, the issues have not been joined, and the case is not ready for final judgment in the trial court." See *Gannon* v. *Sanders,* 157 Conn. 1, 4, 244 A.2d 397 (1968); *Bronson* v. *Thompson,* 77 Conn. 214, 219, 58 A. 692 (1904). There the court also found that there was nothing in the record to indicate that all persons having an interest in the subject matter had been notified as required by Practice Book § 390 (d).

The same situation may well exist here. The basis for accepting the reservation urged upon us at oral argument was that many other cases would be resolved by our answering the questions reserved. Neither the pleadings nor the stipulation indicate that any effort has been made to notify the parties in those actions of this litigation. See *Salamandra* v. *Kozlowski*, 173 Conn. 136, 137–38, 376 A.2d 1103 (1977).

My major reason for declining to answer the questions reserved requires some discussion of the merits of the issues raised. The majority opinion has over-simplified the holding in *Safeco Ins. Co.* v. *Vetre*, 174 Conn. 329, 387 A.2d 539 (1978). In part I of *Safeco,* where we considered a question of inter-policy stacking, we held simply that a reduction of coverage by the "other insurance" clause contained in the policy was invalid because it did not fall within the permissible scope of such clauses sanctioned by § 38-175a-6 (d)[1] of the regulations. The general insuring agreement required by § 38-175a-6 (a) of the regulations that the insurer undertake to pay "all sums which the insured shall be legally entitled to recover as damages . . ." was

[1] Regs., Conn. State Agencies § 38-175a-6 (d) provides as follows: "LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workmen's compensation or disability benefits law, or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily liability coverage to the extent of the payment."

then relied upon to require stacking of the two separate policies issued by the same insurer which were considered in that portion of the opinion.

Part II of *Safeco* dealt with a policy, like the one before us, in which two vehicles were covered and separate premiums were charged for each item of coverage for each vehicle, including uninsured motorist coverage. The question was one of intra-policy stacking. The policy contained a clause stating that "[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each." Relying upon this clause we adopted the contention of the claimant in that case "that the language of the policy is clear: the one instrument constitutes two policies with identical language and coverage including separate uninsured motorist endorsements affording $20,000 coverage per person." Id., 334. Since we had declared in part I that stacking was required for separate policies of insurance, the conclusion that the policy considered in part II constituted two separate policies meant that stacking of the uninsured motorist coverages provided for each vehicle was necessary.

The policy before us contains no provision similar to that relied upon in *Safeco* but provides the contrary: "The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits . . . . In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this . . . policy . . . ."

The regulation; Regs., Conn. State Agencies § 38-175a-6 (d); mandates that the insurer's liability under the uninsured motorist coverage be not less

than the limits specified in General Statutes § 14-112 for bodily injury liability, $20,000 per person, and that this statutory minimum not be subject to reduction, except in the three instances cited, none of which is applicable here. The policy before us complies with this regulation by affording the statutory minimum coverage and does not purport to reduce that minimum. I see nothing in the regulations which bars giving effect to the unambiguous language of the policy provision obviously intended to prevent intra-policy stacking.

Although *Safeco,* part II, appears to have rested primarily upon a policy provision diametrically opposed to the clause here which precludes intra-policy stacking, that opinion also cited with approval the view expressed by some courts and reiterated by the majority in this case that "[w]here two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled, since a person can reasonably expect double coverage when he pays double premiums." *Yacobacci* v. *Allstate Ins. Co.,* 33 Conn. Sup. 229, 231, 372 A.2d 987 (1976). Whether such an expectation is reasonable in the case of a single policy containing a clause like the one we are considering which unambiguously precludes intra-policy stacking is greatly to be doubted. Nevertheless, insurance policies are "contracts of adhesion," not subject to the normal bargaining procedures of ordinary contracts and it would be unconscionable to permit an insurer to collect a premium twice for the same risk. The difficulty in applying that principle to this case is that we do not know from anything in the record whether the premium charged for uninsured motorist coverage with respect to each of the two vehicles is double the

premium applicable to a single vehicle. Although some additional premium for a second car would be justified, corresponding to the greater risk which its coverage might entail, that risk would not be increased with respect to persons falling within the "named insured" classification, since they are covered whether they occupy an owned vehicle, a non-owned vehicle, or no vehicle at all. Whether the policy before us fairly reflects in the premiums charged this reduction in risk which arises when two cars owned by an insured are covered rather than one we can only surmise.

Since I have concluded that the answers to the questions reserved may ultimately depend upon whether the plaintiff insurer is in fact collecting twice for the same risk, an issue which is capable of resolution by competent actuarial evidence, I would reject the present reservation and remand the case to the trial court for further proceedings.

Accordingly, I dissent.