[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before this Court on plaintiff's application to vacate an arbitration award in favor of the defendant.
The facts are not in dispute, a stipulation to that effect, having been filed. The parties agree that the defendant sustained injuries while operating his vehicle which was insured by Jefferson. The policy provided for uninsured motorist coverage of $20,000/$40,000 at the time of the accident. Defendant was also insured by the plaintiff on two other vehicles he owned. That policy provided uninsured motorist coverage of $50,000 per person and $100,000 per accident.
The person (Pendleton), who negligently struck the defendant, carried liability coverage of $50,000 per person and $100,000 per accident. Defendant recovered $50,000 from the tortfeasor's liability policy which represented the full CT Page 5943 coverage available under that policy.
Defendant also recovered $11,666.67 from the Jefferson policy which represented payment of the full uninsured motorist coverage minus a pro rata credit for the tortfeasor payment. The defendant's injuries and damages exceed the uninsured motorist coverage of $70,000. The parties further stipulated that if the plaintiff's policy applies to this claim, plaintiff is entitled to a pro rata credit of $41,667.67 as a result of the tortfeasor's payment of $50,000 and that the total coverage available under said policy, after credit is deducted, is $58,333.33.
A panel of three arbitrators voted two to one to award $58,333.33 to the defendant as uninsured motorist benefits. The majority determined that the term "underinsured highway vehicle" as used in the plaintiff's policy exclusion and Amendatory Endorsement refers only to the tortfeasor and not to the vehicle being operated by the defendant at the time of the accident.
Plaintiff argues that defendant was operating an underinsured motor vehicle, which he owned and, therefore, uninsured motorist coverage is barred by the policy provision which states that the policy does not provide uninsured motorist coverage to
 "(a) You or any relative occupying or struck as a pedestrian by an uninsured or underinsured highway vehicle or a motorcycle that is owned by you; or to any insured occupying an uninsured or underinsured highway vehicle or a motorcycle that is owned by such insured."
Defendant counters by stating that the exclusion is invalid and arguendo even if valid does not apply because the defendant was not operating an underinsured vehicle.
This court may not summarily accept or vacate the arbitrators' award. It must conduct a de novo review of the interpretation and application of the law by the arbitrators. See American Universal Ins. Co. v. DelGreco, 205 Conn. 178,191 (1987).
Plaintiff appears to be making two claims relative to its exclusionary language. First, the exclusion language applies to nontortfeasor vehicles; and second, Connecticut General Statutes Section 38-175c(a)(1)(B) creates a blanket exclusion for motorcycles. CT Page 5944
Defendant argues that the terms "underinsured motor vehicle" in the statute and the term "underinsured motorcycle" in the policy refer only to the tortfeasor's vehicle. Further, the definition of "underinsured motor vehicle" in Connecticut General Statutes Section 38-175c(b)(2) applies to the term motor vehicle wherever it appears in Connecticut General Statutes Section 38-175 (c). Finally, defendant argues Connecticut General Statutes Section 38-175c(a)(1)(B) does not intend to create, nor does it create a blanket exclusion for motorcycles. Accordingly, the plaintiff policy cannot exclude the defendant from claiming uninsured motorist coverage since defendant's motorcycle was not underinsured.
Because the language of the statute is unclear, the Court must look to the legislative history in its attempt to properly interpret the statute. "The words of a statute should be interpreted in their natural and usual meaning unless such reading would defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose. . .even though such construction may seem contrary to the letter of the statute." State v. Delafose, 185 Conn. 517,522 (1981).
Connecticut General Statutes Section 38-175c has been amended on several occasions. In 1979, Connecticut Public Acts No. 79-235 (1979) extended the application of Connecticut General Statutes Section 38-175c to underinsured motor vehicles by enacting Connecticut General Statutes Section 38-175c(b)(1). That amendment also added the definition of the term "underinsured motor vehicle" in Connecticut General Statutes Section 38-175c(b)(2) which was quoted above. Section 38-175 (c)(b)(1) provides that an insurance carrier shall be obligated to make payments to its insured up to the limits of the policy's uninsured motorist's coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident and in effect on the tortfeasor's vehicle have been exhausted. However, the total amount of recovery from all policies cannot exceed the limits of the insured's uninsured motorist coverage. The public policy rationale behind the enactment of Connecticut Public Acts No. 79-235 (1979) creating underinsured motorists coverage was to correct the anomalous situation where an injured party could find himself in a better position with regard to recovery of damages if the tortfeasor had no liability coverage than if the tortfeasor had only the statutory minimum amount of coverage. See, e.g., Simonette v. Great American Insurance Company, 165 Conn. 466 (1973). The purpose of the amendment was to require that "coverage be CT Page 5945 provided against the underinsured motorist. It also requires (the) insurance company of an innocent driver to pay up to the full amount of the uninsured motorist coverage once the at fault driver's insurance has been exhausted and a deficiency remains." Remarks of Rep. Mastrianni, 22 H.R. Proc., pt. 16, 1979, Sess., p. 5341; Nationwide Ins. Co. v. Gode, 187 Conn. 386,391-92 (1982).
Connecticut General Statutes Section 38-175c was again amended in 1983 by Connecticut Public Acts No. 83-461 (1983) which added the exclusionary language found in Section 38-175c(a)(1)(A) and (B) which was quoted earlier. The exclusionary language was again amended in 1985 by Connecticut Public Acts No. 85-7 (1985) which added "or motorcycle that is" to Connecticut General Statutes Section 38-175c(a)(1)(B).
The language in subsection (a)(1)(A) and (B) was added to Connecticut General Statutes Section 38-175c in response to Harvey v. Travelers Ins. Co., 188 Conn. 245
(1982). In Harvey, the plaintiff was operating an uninsured motorcycle, owned by his father, that collided with another uninsured vehicle owned by a third party. The other vehicle was the tortfeasor's vehicle. The plaintiff sought coverage under a policy issued to his mother for a vehicle owned by her. The Connecticut Supreme Court allowed the plaintiff to recover and stated that uninsured motorist coverage "attached to the insured person, not the insured vehicle." Id. at 258. Therefore, since the uninsured motorist coverage is person oriented, the coverage follows the person wherever he is, even in an uninsured motor vehicle, and recovery is available regardless of the insured's status at the time of the injury. Id. at 249-50.
Senator Baker, in remarking on Connecticut Public Acts No. 83-461 (1983), explained that the portion of the bill that amended Connecticut General Statutes Section 38-175c(a)(1) was in response to the ruling in Harvey, in which the court
 held that a person owning more than one car would have uninsured motorist coverage on all of his cars even if he chose not to insure one of them. The decision requires insurors (sic) to provide coverage to people who choose to break this state's compulsory insurance law. . . . This bill then would deny uninsured motorist coverage to such people.
26 S. Proc., pt. 9, 1983 Sess., p. 3055. In the House of CT Page 5946 Representatives, representative Noonan stated, "(The bill) prohibits the extension of coverage to a vehicle which is owned by an insured but does not have a policy of insurance covering it. . . ." 26 H.R. Proc., pt. 21, 1983 Sess., p. 7438. The anti-Harvey amendment to Connecticut General Statutes Section 38-175c was intended to preclude uninsured motorist coverage when a claimant did not have any insurance, as required by the state's compulsory insurance law, on the motor vehicle which he owned and was occupying at the time of the accident. The legislative history of Connecticut Public Acts No. 83-461 (1983) is silent on the reason for including the term "underinsured motor vehicle" in the statutory exclusion under Connecticut General Statutes Section 38-175c(a)(1)(B).
As was previously mentioned, Connecticut Public Acts No. 85-7 (1985) added "or motorcycle that is" to Connecticut General Statutes Section 38-175c-(a)(1)(B). The reason for this addition was explained by Senator Schoolcraft when he stated:
 Yes Mr. President, this Bill clears up the imbiguity (sic) which currently exists in . . . Section 38-175 (c) (sic). Currently an insured who is injured while driving an uninsured automobile that he owns is not covered by the uninsured motorist provisions but if he were injured while driving his own uninsured motorcycle he would be covered. What this Bill does is to put the owner of an uninsured motorcycle in the same position as the owner of an uninsured automobile so that it clears (sic) that both situations would be treated alike.
28 S. Proc. pt. 2, 1985 Sess., p. 600. The intent of the legislature, as is evidenced in the legislative history, was to treat uninsured operators of automobiles and uninsured operators of motorcycles alike.
The Connecticut Supreme Court has on several occasions interpreted Connecticut General Statutes Section 38-175c(b)(1) and (2). In Nationwide Ins. Co. v. Gode,187 Conn. 386 (1982), the court concluded that the word "policy" in the phrase "applicable limits of liability under the uninsured motorist portion of the policy against which claim is made" in Connecticut General Statutes Section 38-175c(b)(2) could reasonably and logically be interpreted to include the plural term "policies." Id. at 394. Therefore, in order to determine the insured claimant's underinsured motorist CT Page 5947 benefits, the insured claimant was allowed to aggregate or "stack" the uninsured motorist coverage limits of liability on two motor vehicles which he owned and which were covered under one policy.
In American Universal Ins. Co. v. DelGreco,205 Conn. 178 (1987), the court concluded that in determining whether a motor vehicle is underinsured for purposes of Connecticut General Statutes Section 38-175c, the aggregate of the limits of all such bonds and policies on the tortfeasor's motor vehicle is compared against the amount of uninsured motorist coverage of the insured. In the decision, the DelGreco court explained the definition of an underinsured motor vehicle in Connecticut General Statutes Section 38-175c(b)(2) and stated:
 subsection ((b)(2)) mandates that, in determining whether a motor vehicle is `underinsured' for purposes of Section 38-175c, the aggregate of the limits of all such bonds and policies on the tortfeasor's motor vehicle is compared against the amount of uninsured motorist coverage oe of the insured.
Id. at 194 (emphasis original). The court also noted
 Although the language of subsection (b)(1) does not specifically limit the phrase `all bodily injury bonds or insurance policies applicable at the time of the accident' to the tortfeasor's motor vehicle as does subsection (b)(2), when it is read together with the entire statute, in order for the legislation to be consistent, it must also be interpreted as referring to any automobile policy issued to the tortfeasor (sic).
Id. at 194-95 (emphasis original). According to DelGreco, the definition of an underinsured motor vehicle contained in Connecticut General Statutes Section 38-175c(b)(2) applies only to the tortfeasor's motor vehicle and that "underinsured motorist coverage is triggered when the tortfeasor's automobile liability coverage is exhausted." Id. at 195-96 (emphasis original).
In American Motors Ins. Co. v. Gould, 213 Conn. 625
(1990), the court ruled that a tortfeasor's vehicle is underinsured only if the insured's uninsured motorist coverage CT Page 5948 limits are greater than the total liability limits of the tortfeasor's vehicle. In Travelers Ins. Co. v. Kulla,216 Conn. 390 (1990), the court explained:
 Implicit in the statutory scheme of Section 38-175c and in the definition of an `underinsured motor vehicle' in Section 38-175c(b)(2), is the commonsensical requirement that the underinsured vehicle be causally connected to the loss for which the claimant seeks compensation. `The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.'
Id. at 398 (emphasis original) (citations omitted).
It, therefore, follows from the above cases and based upon the rules of statutory construction, that the term "uninsured motor vehicle" refers to the tortfeasor's motor vehicle.
The definition of the term "underinsured motor vehicle" is mandated by the definition in Connecticut General Statutes Section 38-175 (c)(b)(2). "When legislation contains a specific definition, the courts are bound to accept that definition." Johnson v. Manson, 196 Conn. 309, 316 (1985).
The Amendatory Endorsement's definition of underinsured highway vehicle is based upon the definition of underinsured motor vehicle in Connecticut General Statutes Section 38-175c(b)(2), which in both Kulla (supra) and DelGreco (supra) has been held to refer only to the tortfeasor's vehicle.
Since the motorcycle was not owned by the tortfeasor, the motorcycle was not an underinsured motor vehicle as defined in the policy.
The application to vacate the arbitration award is denied and defendant's application to confirm is granted.
MIHALAKOS, J.