[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Aetna Casualty Surety Company and The Automobile Insurance Company of Hartford, Connecticut (collectively referred to as "plaintiff" or "Aetna") have brought this declaratory judgment action to determine whether they are required to provide uninsured motorist coverage[1] to the named defendants.[2] The plaintiff has also filed a motion for summary judgment asserting that the underlying facts are not in dispute and, therefore, the court may address the meaning of the insurance policy, i.e., the issue of Aetna's liability, as a question of law and dispose of the case on said motion. The plaintiff has timely filed a memorandum of law in support of its motion.
All defendants have filed answers and counterclaims to CT Page 5070 the complaint and have filed cross-motions for summary judgment. By way of the counterclaims, the defendants seek a declaratory judgment as to whether they may claim uninsured motorist benefits from the various automobile insurance policies issued by Aetna under which the defendants are insured. In addition, the defendants also seek a declaration that the policy exclusion relied upon by Aetna is not applicable to their claims, is void as against public policy, is contrary to the language of the policy, and is contrary to Conn. Gen. Stats. 38-175c (now 38a-336, but referred to herein as 38-175c) and regulations promulgated thereunder. each defendant has timely filed a memorandum of law in support of his motion for summary judgment.
On December 14, 1990, argument was held on the summary judgment motions, and the court found that reasonable notice had been given to all persons interested in the dispute. The parties have stipulated that Conn. Gen. Stat. 51-183b is waived if a decision is rendered by June 15, 1991. The court appreciates the patience of counsel, but is of the opinion that Conn. Gen. Stat. 51-183b does not apply to decisions on motions, even cross-motions for summary judgment that, in this case, will result in final disposition of the case.
Each of the defendants has filed a claim for uninsured motorist benefits with the plaintiffs. Although there are some factual variations in the claims asserted by the defendants,[3]
all of the claims have a common core of operative facts which give rise to the particular coverage issue involved in this action. Because the claim involving the defendant Americo Arduini, Administrator, is typical of the claims of all the defendants, the facts underlying the Arduini claim will be used as an example.
On December 23, 1988, Americo Arduini, Jr. was operating his own Nissan automobile at the intersection of Lamberton Street and Ella Grasso Boulevard in the City of New Haven when he was struck by a vehicle negligently operated by Isaac Rodriguez. On December 28, 1988, Arduini died as a result of the injuries he sustained in the accident. The Arduini vehicle was insured under a policy issued by The Hartford. The policy provided liability and uninsured motorist coverage of $20,000 per person and $40,000 per accident, the minimum statutory requirements of Connecticut. The Rodriguez vehicle was insured under a policy issued by Nationwide Insurance Company. The policy provided liability coverage of $100,000, a sum which has been paid in full. The funds received by the defendant were insufficient to pay the full damages sustained by the defendant decedent Americo Arduini, Jr. The defendant thereafter presented a claim for CT Page 5071 uninsured motorist benefits to the plaintiffs. The plaintiff has refused to make any payments.
At the time of the accident, Arduini was a resident of his parents' household and thus a covered "family member" under two Aetna Personal Auto Policies issued to his parents. Those policies provided uninsured motorists coverage in the face amount of $500,000 for each of the three vehicles, or a total "stacked" coverage of $1,500,000.00. The policies issued to the Arduinis contained an exclusion which provided:
 We do not provide Uninsured Motorists Coverage for bodily injury sustained by: 1. The named insured shown in the Declarations or family members when occupying or when struck as a pedestrian by, an uninsured motor vehicle, an underinsured motor vehicle or a motorcycle owned by the named insured. 2. Any covered person occupying an uninsured motor vehicle or an underinsured motorcycle owned by such covered person.
Aetna Personal Policy Endorsement 16126-J, Part C.2.B (effective October 1986). (Emphasis in original to denote terms specifically defined within the policy.) Thus, the common facts may be characterized as follows:
1. Each defendant suffered personal injuries or death as a result of a two vehicle accident that was caused by the negligence of the operator of the other vehicle. 2. Each defendant at the time of his accident was operating an insured vehicle owned by the named insured of the Aetna policy against which he is making claim. 3. Each defendant's damages have a value greater than the automobile liability insurance coverage available from the tortfeasor or, in the alternative, the tortfeasor had no automobile liability insurance in effect at the time of the accident. 4. None of the vehicles operated by the defendants were listed on the Aetna policy against which the claim for uninsured motorists coverage is made, but rather had minimum statutorily required coverage through another company.[4]
5. In each case, the amount of liability coverage provided by the other insurance company was less than the amount of uninsured motorist coverage provided by the Aetna policy against which the claim for uninsured motorist coverage is made. CT Page 5072 6. Also in each case, the combined uninsured motorist coverage available from the policy insuring the vehicle in which the defendant was operating and from the Aetna policy under which the defendant is an insured is greater than the tortfeasor's liability coverage.
Declaratory Judgment
A declaratory judgment action is a special proceeding under Conn. Gen. Stat. 52-29 (a) which provides:
 The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.
A declaratory action is implemented by sections 389 and 390 of the Connecticut Practice Book and is appropriate where "there is an actual bona fide and substantial question in dispute or substantial uncertainty of legal relations which requires settlement between the parties." Conn. Practice Bk. 390(b) (rev'd to 1978, as updated to October 1, 1990). The declaratory judgment procedure has been used many times in cases involving questions of insurance coverage. E.g., Pecker v. Aetna Casualty Surety Co., 171 Conn. 443 (1976); Safeco Ins. Co. v. Vetre, 174 Conn. 329 (1978); Nationwide Ins. Co. v. Gode, 187 Conn. 386 (1982). It is particularly appropriate here in light of the earlier failed attempt to raise this issue as a class action. See Arduini v. Automobile Ins. Co. of Hartford, 23 Conn. App. 585 (1990).
Any party may move for summary judgment provided that the pleadings are closed as between the parties to the motion. Conn. Practice Bk. 379. The moving party must prove that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Bk. 384; Katz v. Rubenstein, 201 Conn. 39, 48-49
(1986). Both the plaintiff's and defendants' motions for summary judgment seek to resolve the same issue: to determine the meaning and validity of the policy exclusion and therefore whether the defendants are entitled to seek uninsured motorists benefits from the Aetna policies in question. The pleadings demonstrate there is no dispute concerning the facts which are determinative of the litigants' rights under the policy exclusion in question. Where there is definitive contract language, the meaning of the contract is a question of law for the court. Thompson Peck v. Harbor Marine Contracting, CT Page 5073203 Conn. 123 (1987). Accordingly, the issue of whether the defendants are entitled to uninsured motorist benefits under the Aetna policies can appropriately be resolved by way of summary judgment.
The policy exclusion at issue in this case is similar to the language of Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) which provides:
 No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.
The term "underinsured motor vehicle" is defined in Conn. Gen. Stat. 38-175c (b)(2) which provides:
 For the purpose of this section, an "underinsured motor vehicle" means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist policy against which claim is made under subdivision (1) of this subsection.
The plaintiff insurance company contends that the terms "uninsured motor vehicle" or "underinsured motor vehicle" contained in Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) refers to the innocent claimants' motor vehicle whether or not it is also the tortfeasor's motor vehicle. The plaintiff claims that the legislative history and purpose of the statutory exclusion make it clear that the terms "uninsured motor vehicle" and "underinsured motor vehicle" in Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) refer to the innocent claimant's vehicle. In addition, the plaintiff argues that its interpretation of the statute is mandated by the wording of the statute, i.e., that the terms "uninsured" and "underinsured" are to be accorded a meaning which is consistent with their obvious association. Plaintiff maintains that if the term CT Page 5074 uninsured motor vehicle refers to an innocent claimant's vehicle rather than the tortfeasor's vehicle, the term underinsured motor vehicle must be understood to have the same reference. Otherwise, plaintiff argues, there would be an incongruity between these associated words. The plaintiff also argues that the language of Conn. Gen. Stat. 38-175c (a)(1)(A) creates a blanket exclusion for motorcycles owned by the named insureds. The plaintiff claims that the use of the indefinite article "a" before the word motorcycle literally requires that any motorcycle owned by the named insured, whether insured or not, is within the purview of the exclusion. The plaintiff concedes, however, that the absence of the indefinite article "a" before the word motorcycle in Conn. Gen. Stat. 38-175c (a)(1)(B) leads to a literally different meaning.
The defendants[5] argue that the terms "uninsured motor vehicle" and "underinsured motor vehicle" in Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) refer to the tortfeasor's vehicle. The defendants claim their interpretation of the statute is supported by the legislative history, the policy reasons for the statute, and the case law interpreting Conn. Gen. Stat. 38-175 (c)(b)(1) and (2). The defendants further argue that the definition of "underinsured motor vehicle" in Conn. Gen. Stat. 38-175c (b)(2) applies to the term underinsured motor vehicle wherever it appears in 38-175c. Moreover, the defendants argue that the definition of underinsured motor vehicle in Conn. Gen. Stat. 38-175c (b)(2) has been interpreted in American Universal Co. v. DelGreco, 205 Conn. 178, 194
(1987) and Travelers Ins. Co. v. Kulla, 216 Conn. 390, 398
(1990) as applying only to the tortfeasor's motor vehicle. The defendants also argue that the indefinite article "a" before the word motorcycle in the statute does not result in a blanket exclusion for motorcycles because such a technical reading would defeat the remedial purpose of the statute and the intention of the legislature.
When the language of a statute is plain and unambiguous, the court need look no further than the words themselves because it is assumed that the language expresses the legislature's intent. State v. White, 204 Conn. 410, 421
(1987). "If, however, the language is unclear, [the court] must ascertain the intent of the legislature by examining the language of the statute, its legislative history and the purpose the statute is to serve." Id. at 422. "The words of a statute should be interpreted in their natural and usual meaning unless such reading would defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose . . . even though such construction may seem contrary to the letter of the statute." State v. Delafose, 185 Conn. 517, 522 (1981) (quoting Royce v. Henage, CT Page 5075170 Conn. 387, 392 (1976)). "In addition, the statute must be considered as a whole, with a view toward recognizing its separate parts in order to render a reasonable overall interpretation." American Universal Ins. Co. v. DelGreco,205 Conn. 178, 193 (1987).
Background of Conn. Gen. Stat. 38-175c (now 38a-336)
Conn. Gen. Stat. 38-175c has been amended on several occasions. In 1979 Conn. Public Acts No. 79-235 extended the application of Conn. Gen. Stat. 38-175c to underinsured motor vehicles by enacting Conn. Gen. Stat. 38-175c (b)(1). That amendment also added the definition of the term "underinsured motor vehicle" in Conn. Gen. Stat. 38-175c (b)(2) quoted above. The public policy rationale behind the enactment of the amendment creating underinsured motorists coverage was to correct the anomalous situation where an injured party could find himself in a better position with regard to recovery of damages if the tortfeasor had no liability coverage than if the tortfeasor had only the statutory minimum amount of coverage. E.g., Simonette v. Great American Insurance Company, 165 Conn. 466
(1973). The purpose of the amendment was to require "coverage be provided against the underinsured motorist. It also requires [the] insurance company of an innocent driver to pay up to the full amount of the uninsured motorist coverage once the at-fault driver's insurance has been exhausted and a deficiency remains." Remarks of Rep. Mastrianni, 22 H.R. Proc., pt. 16, 1979, Sess., p. 5341; Nationwide Ins. Co. v. Gode, 187 Conn. 386, 391-92 (1982).
Conn. Gen. Stat. 38-175c was again amended in 1983 by Conn. Pub. Acts No. 83-461 (1983) which added authorization for the exclusionary language found in 38-175c (a)(1)(A) and (B) which was quoted above. The exclusionary language was again amended in 1985 by Conn. Pub. Acts. No. 85-7 (1985) which added "or motorcycle that is" to Conn. Gen. Stat. 38-175c (a)(1)(B), and, contrary to the printed volumes of C.G.S. and C.G.S.A., deleted the article "a" before "motorcycle" in C.G.S. 38-175c (a)(1)(A).
The language in subsection (a)(1)(A) and (B) was added to Conn. Gen. Stat. 38-175c in response to Harvey v. Travelers Ins. Co., 188 Conn. 245 (1982). In Harvey, the plaintiff was operating an uninsured motorcycle, owned by his father, that collided with another uninsured vehicle owned by a third party. The other vehicle was the tortfeasing vehicle. The plaintiff sought coverage under a policy issued to his mother for a vehicle owned by her. The Connecticut Supreme Court allowed the plaintiff to recover and stated that uninsured motorist coverage "attaches to the insured person, not the insured CT Page 5076 vehicle." Id. at 258. Therefore, since the uninsured motorist coverage is person oriented, the coverage follows the person wherever he is, even in an uninsured motor vehicle,[6] and recovery is available regardless of the insured's status at the time of the injury. Id. at 249-50.
Senator Baker, in remarking on Conn. Pub. Acts No. 83-461 (1983), explained that the portion of the bill that amended Conn. Gen. Stat. 38-175c(a)(1) was in response to the ruling in Harvey, in which the court
 held that a person owning more than one car would have uninsured motorist coverage on all of his cars even if he chose not to insure one of them. The decision requires insurors [sic] to provide coverage to people who choose to break this state's compulsory insurance law . . . . This bill then would deny uninsured motorist coverage to such people.
26 S.Proc., pt. 9, 1983 Sess., p. 3055. In the House of Representatives, Representative Noonan stated, "[The bill] prohibits the extension of coverage to a vehicle which is owned by an insured but does not have a policy of insurance covering it . . . ." 26 H.R. Proc., pt. 21, 1983 Sess., p. 7438. Thus it appears that the anti-Harvey amendment to Conn. Gen. Stat. 38-175c may well have been intended to authorize exclusion of uninsured motorist coverage when a claimant did not have any insurance on the motor vehicle which he owned and was occupying at the time of the accident. The legislative history of Conn. Pub. Acts. No. 83-461 (1983) is silent on the reason for including in Conn. Gen. Stat. 38-175c (a)(1)(A) "pedestrian," and "underinsured motor vehicle."
As was previously mentioned, Conn. Pub. Acts No. 85-7 (1985) added "or motorcycle that is" to Conn. Gen. Stat. 38-175c (a)(1)(B). The reason for this addition was explained by Senator Schoolcraft when he stated:
 Yes Mr. President, this Bill clears up the imbiguity [sic] which currently exists in . . . Section 38-175 (c) [sic]. Currently an insured who is injured while driving an uninsured automobile that he owns is not covered by the uninsured motorist provisions but if he were injured while driving his own uninsured motorcycle he would be covered. What this Bill does is to put the owner of an uninsured motorcycle CT Page 5077 in the same position as the owner of an uninsured automobile so that it clears [sic] that both situations would be treated alike.
28 S.Proc, pt. 2, 1985 Sess., p. 600. Thus the intent of the legislature as is evidenced in the legislative history was to treat uninsured automobiles and uninsured motorcycles alike.
The Connecticut Supreme Court has on several occasions interpreted Conn. Gen. Stat. 38-175c (b)(1) and (2). In Nationwide Ins. Co. v. Gode, 187 Conn. 386 (1982), the Court concluded that the word "policy" in the phrase "applicable limits of liability under the uninsured motorist portion of the policy against which claim is made" in Conn. Gen. Stat. 38-175c (b)(2) could reasonably and logically be interpreted to include the plural term "policies." Id. at 394. Therefore, in order to determine the insured claimants underinsured motorist benefits, the insured claimant was allowed to aggregate or "stack"[7] the uninsured motorist coverage limits of liability on two motor vehicles which he owned and which were covered under one policy.
In American Universal Ins. Co. v. DelGreco, 205 Conn. 178
(1987), the Court concluded that in determining whether a motor vehicle is underinsured for purposes of Conn. Gen. Stat. 38-175c, the aggregate of the limits of all such bonds and policies on the tortfeasor's motor vehicle is compared against the amount of uninsured motorist coverage of the insured. In its decision, the DelGreco Court explained the definition of an underinsured motor vehicle in Conn. Gen. Stat. 38-175c (b)(2) and stated:
 subsection [(b)(2)] mandates that, in determining whether a motor vehicle is `underinsured' for purposes of 38-175c, the aggregate of the limits of all such bonds and policies on the tortfeasor's motor vehicle is compared against the amount of uninsured motorist coverage of the insured.
Id. at 194-95 (emphasis original). The court also noted
 Although the language of subsection (b)(1) does not specifically limit the phrase `all bodily injury bonds or insurance policies applicable at the time of the accident' to the tortfeasor's motor vehicle as does subsection (b)(2), when it is read together with the entire statute, in order for the legislation to CT Page 5078 be consistent, it must also be interpreted as referring to any automobile policy issued to the tortfeasor [sic].
Id. at 194-95 (emphasis original). According to DelGreco the definition of an underinsured motor vehicle contained in Conn. Gen. Stat. 38-1775c (b)(2) means only a tortfeasing motor vehicle and that underinsured motorist coverage is triggered when the tortfeasor's automobile liability coverage is exhausted. Id. at 395-96 (emphasis original).
In American Motors Ins. Co. v. Gould, 213 Conn. 625
(1990), the Court ruled that a tortfeasing vehicle is underinsured only if the insured's uninsured motorist coverage limits are greater than the total liability limits of the tortfeasing vehicle. In Travelers Ins. Co. v. Kulla, 216 Conn. 390
(1990), the Court explained:
 Implicit in the statutory scheme of 38-175c and in the definition of an `underinsured motor vehicle' 38-175c (b)(2), is the commonsensical requirement that the underinsured vehicle be causally connected to the loss for which the claimant seeks compensation. `The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.'
Id. at 398 (emphasis original) (citations omitted).
According to this line of cases, it is clear that a vehicle which is "underinsured" must also be a "tortfeasing" vehicle. Whether the tortfeasing vehicle is an underinsured motor vehicle is a post-accident determination made by measuring the liability insurance of the negligent vehicle against all the uninsured motorist insurance of the insured, claimant. Gould, 213 Conn. at 630-31; DelGreco,205 Conn. at 194-95. If the liability insurance of the tortfeasing vehicle is less than the insured's uninsured motorist coverage, then the tortfeasing vehicle is an underinsured motor vehicle. Gould, 213 Conn. at 630-31; DelGreco, 205 Conn. at 194-95. The insured's uninsured motorist average is triggered when the liability insurance on the tortfeasing vehicle has been exhausted and there is additional coverage under the insured's uninsured motorist insurance which allows for the insured's greater recovery. Gould, 213 Conn. at 630-31; DelGreco,205 Conn. at 194-95. CT Page 5079
Based on the language of the statute, the rules of statutory construction and the foregoing legislative history and case law discussion, it is the court's opinion that the term "uninsured motor vehicle" in Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) can refer to the insured's motor vehicle when, depending upon the factual circumstances, it is either the innocent motor vehicle or the tortfeasing motor vehicle. However, the term "underinsured motor vehicle" in Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) can refer to the insured's motor vehicle (which may be the claimant's vehicle) only when it is the tortfeasing vehicle. The language of the exclusion which is authorized by the statute means that the insured must own either the uninsured motor vehicle of the underinsured motor vehicle in order for the exclusion to apply. The exclusion merely prevents the triggering of uninsured motorist coverage. An example of when the uninsured motor vehicle of Conn. Gen. Stat. 38-175c (a)(1)(A) and (B) is the innocent vehicle would be a Harvey situation, i.e., the claimant would be occupying the non-tortfeasing motor vehicle which had no insurance liability coverage. In such a situation the statutorily authorized exclusion (if otherwise valid) prevents the named insured or resident relative who is occupying an uninsured motor vehicle, i.e., a vehicle with no insurance liability coverage, which is owned by the named insured and which, is innocently involved in an accident, from claiming uninsured motorist benefits (provided the insurance policy contains such an exclusion).
The uninsured motor vehicle of Conn. Gen. Stat. 38-175c, (a)(1)(A) and (B) may also be the tortfeasing motor vehicle, i.e., a vehicle with no insurance liability coverage but which causes the accident (and this also applies in a one car situation). In such a case, the statutory exclusion may prevent innocent claimants (either the named insured or a resident relative), who are occupying the uninsured motor vehicle, from claiming uninsured motorist benefits under any policy containing such an exclusion. In light of Harvey and the legislative history Conn. Gen. Stat. 38-175c(a)(1)(A) and (B), the court finds, for the reasons set forth herein, that this interpretation conforms with the legislative intent to abolish the Harvey created disincentive to purchase motor vehicle insurance. However, whether the legislature managed to achieve this goal remains to be seen, since this court need go no further than arriving at a rational reading of the statute which will decide this case, and this case is about underinsured, not uninsured vehicles.
Similarly, with respect to the "pedestrian exclusion," Conn. Gen. Stat. 38-175c(a)(1)(A) authorizes the exclusion of uninsured motorist coverage when the named insured or a CT Page 5080 resident relative is struck as a pedestrian by an uninsured motor vehicle (a vehicle having no insurance liability coverage) or an underinsured motor vehicle (a tortfeasing vehicle having liability limits less than the insured's total uninsured motorist coverage) which is owned by the named insured. (Obviously, the insured's motor vehicle, whether uninsured or underinsured, has to be the tortfeasing vehicle since a pedestrian cannot be a tortfeasing motor vehicle). This interpretation is in accord with the legislative intent to prevent a disincentive to purchase automobile insurance.
The decisive issue in this case concerns the term underinsured motor vehicle in Conn. Gen. Stat. 38-175c (a)(1)(A) and (B). Conn. Gen. Stat. 38-175c(a)(1)(A) permits exclusion from uninsured motorist coverage of a named insured or resident relative when occupying an underinsured motor vehicle owned by the named insured. Conn. Gen. Stat. 38-175c(a)(1)(B), excludes from coverage any insured occupying an underinsured motor vehicle owned by such insured. The plaintiff contends that because of the Harvey decision the term underinsured motor vehicle refers to the innocent claimant's vehicle and not the tortfeasor's vehicle. According to the plaintiff, the innocent claimant's vehicle is underinsured if it carries only the minimum mandatory liability coverage as compared to the claimant's uninsured motorist coverage carried on other vehicles. The defendants argue that the term underinsured motor vehicle refers to the tortfeasor's motor vehicle. Alternatively, defendants argue that the term refers to out-of-state motor vehicle with liability coverage less than the $20,000/40,000 minimum mandated by Conn. Gen. Stat.14-112.
The definition of underinsured motor vehicle is mandated by the definition in Conn. Gen. Stat. 38-175c (b)(2). "When legislation contains a specific definition, the courts are bound to accept that definition." Johnson v. Manson, 196 Conn. 309,316 (1985) (citations omitted). As has been interpreted by DelGreco, Gould, and Kulla, underinsured motor vehicle means the tortfeasor' motor vehicle. Neither the plaintiff's definition nor the defendants' alternative definition are supported by the language of the statute, the legislative history, or the case law. In fact, the plaintiff's definition would make any vehicle owned by a named insured an underinsured motor vehicle if that vehicle did not have liability coverage at least equal to the uninsured motorist coverage of the Aetna policy. It is clear that the plaintiff's position also prevents the stacking of uninsured motorist policies which practice has been approved by the Connecticut Supreme Court. Nationwide Ins. Co. v. Gode, 187 Conn. 386, 395 (1982); Safeco Ins. Co., 174 Conn. 329, 334 (1918). Had the legislature CT Page 5081 intended either result, presumably the legislature would have discussed them while in session or would have provided such language within the exclusion itself. "There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law." Hurlbut v. Lemelin,155 Conn. 68, 74 (1967).
It is held that pursuant to the statute it is possible to have an innocent (not at fault) claimant occupying the tortfeasing (at fault) motor vehicle which, after the accident, is determined to be an underinsured motor vehicle. In such a case, the underinsured motor vehicle would be the innocent claimant's vehicle and the exclusion could preclude uninsured motorist coverage to the innocent claimant, provided a policy exclusion so provided and further provided that that exclusion is otherwise valid, two holdings which this court is not making today.
Plaintiff has also argued that the inclusion of the indefinite article "a" before the word motorcycle in Conn. Gen. Stat. 38-175c(a)(1)(A) literally requires a blanket exclusion of all motorcycles whether insured or not. The defendants contend that no such blanket exclusion was intended but rather that the statute should be read so that the words uninsured and underinsured modify motorcycle. From inspection of P.A. 85-7, the court believes that the "a" in 38-175c(a)(1)(A) is a misprint, but even if were not, in spite of the fact that the statute could literally be read as advocated by the plaintiff, such a technical reading would defeat the remedial purpose of the statute and produce a result not evidenced by the legislative history, intended by the legislature, or found by reading the statute as a whole. First, a literal reading of the language of this statute was rejected as being contrary to the fundamental purpose of underinsured motorist coverage. Travelers Ins. Co. v. Kulla,216 Conn. 390, 395 (1990). Second, a motorcycle is a motor vehicle under Connecticut law. Conn. Gen. Stat. 14-29; Conn. Dept. Regs. 38-175a-2 (c); Citrano v. Berkshire Mutual Ins. Co., 171 Conn. 248, 255-56 (1976). Third, different treatment of motorcycles was not the legislative intent behind the exclusion considering that the exclusion was passed by the legislature as a remedy to the insurance disincentive of the Harvey decision albeit the claimant in that case was operating his father's uninsured motorcycle. Fourth, an intent to treat motorcycles the same as automobiles is found in the legislative history of Conn. Pub. Acts No. 85-7 (1985), which amended Conn. Gen. Stat. 38-175c(a)(1)(B). The court reads Conn. Gen. Stat. 38-175c(a)(1)(A) and (B) so that the words uninsured and underinsured modify the word motorcycle in Conn. Gen. Stat. CT Page 5082 38-175c(a)(1)(A), as they do in 38-175c(a)(1)(B).
Having determined the meaning of the terms uninsured motor vehicle and underinsured motor vehicle in Conn. Gen. Stat. 38-175c(a)(1)(A) and (B) and explained the operation of the statutorily permitted exclusion, the issue of the validity of the Aetna policy exclusion in Endorsement 16126-J at Part C.2.B. need not be reached because the policy exclusion, even if valid, does not apply to the defendants, for the following reasons.
 We do not provide Uninsured Motorists Coverage for bodily injury sustained by: (1) The named insured shown in the Declarations or family members when occupying or when struck as a pedestrian by, an uninsured motor vehicle, an underinsured motor vehicle or a motorcycle owned by the named insured. (2) Any covered person occupying an uninsured motor vehicle or an underinsured motor vehicle, or an uninsured motorcycle or an underinsured motorcycle owned by such covered person.
First, each defendant was operating an insured motor vehicle with liability coverage at least equal to the statutory minimum requirement. Second, no defendant was responsible for or caused the accident. Third, no defendant was operating an underinsured motor vehicle as the term is defined in the Aetna policy and as defined in Conn. Gen. Stat. 38-175c(b)(2) as explained in the preceding analysis. Fourth, each defendant was either injured or killed as a result of his accident. Fifth, each defendant had uninsured motorist coverage under an Aetna policy (or policies) at issue here as well as under the policy of the vehicle he was operating at the time of the accident. Since no defendant was operating or occupying an uninsured motor vehicle, or underinsured motor vehicle (which is only defined as a tortfeasing vehicle), the policy exclusion does not apply. Accordingly, each defendant must be allowed to claim the uninsured motorist coverage available from his Aetna policy and to aggregate or stack the Aetna policy with the policy insuring the vehicle he was operating at the time of the accident in order to determine whether the tortfeasing vehicle was underinsured.
Although not critical to the decision, the court does find that there is a policy ambiguity, and thus that interpretation which will sustain the claim and cover the loss must be adopted. Griswold v. Union Labor Life Ins. Co., CT Page 5083186 Conn. 507, 513 (1982). Therefore, the Aetna policy in question should be construed against Aetna; its definition of an uninsured motor vehicle, as not including a vehicle owned by or furnished or available for the regular use of a named insured motor vehicle, as not including a vehicle owned by or furnished or available for the regular use of a named insured or a family member, conflicts with its exclusion from uninsured motorist coverage of a named insured or family member occupying; or struck by an uninsured motor vehicle owned by the named insured.
The plaintiff has argued that the rule of contra-preferentem, which requires ambiguities in insurance contracts to be construed against the insurer, is a rule of last resort to be used after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument. The plaintiff cites Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9, 10 n. 2 (2d Cir. 1983), to support this argument.
This contract is ambiguous not because the contract terms are susceptible to two reasonable interpretations but because Aetna has specifically defined terms within the contract and has used those terms in conflicting contexts, thus creating the ambiguity.
The foregoing was largely prepared in typewritten form before May 14, 1991, when our Supreme Court's opinion in Chmielewski v. Aetna Casualty and Surety Co., 218 Conn. 646
(1991) was announced.
The court notes with some chagrin that Justice Borden's opinion deals with the issue of the validity and applicability of a policy exclusion similar to (if not the functional equivalent of) the exclusion in the instant case in four paragraphs, in contradistinction to the lengthy opinion preceding this paragraph. The court declines to decide whether Chmielewski, supra, controls, since if it does, the result is the same, and if it does not control, the result is still the same.
In spite of the statement from the court that further submissions from counsel were neither required nor desired, the court did receive an additional submission enclosing a copy of Forsberg v. New Hampshire Ins. Co., 24 CLT App. 655 (1991), and the understandable rebuttal from the other side. The court considers Forsberg, supra, to be just one more case consistent with DelGreco, Gould and Kulla, as discussed above in this opinion. CT Page 5084
CONCLUSION
Based on the foregoing, it is found that the defendants are entitled to uninsured motorist benefits under the Aetna policy and, therefore, summary judgment of declaratory judgment is granted in favor of each of the twelve defendants in these consolidated cases.
KOLETSKY, J.
ENDNOTES